STATE v. JAMES SHELTON, Appellant.—No. 38416.—174 S. W. (2d) 202.

Division Two, October 4, 1943.

800

_H. M. Atwell_ for appellant.

*Roy McKittrick,* Attorney General, and *Tyre W. Burton,* Assistant Attorney General, for respondent.

ELLISON, J.—The appellant was convicted of felonious assault in the circuit court of Miller county and his punishment fixed by the jury at two years' imprisonment in the penitentiary for shooting Ruby Pletzer with a pistol, in violation of Sec. 4408, R. S. 1939, Mo. R. S. A., sec. 4408. She and the appellant had theretofore been partners in the operation of a beer tavern for about five years and apparently had lived together part of that time. The partnership had been dissolved substantially three months before the assault, the State proving by one witness, sheriff Mace, that about that time he was called to the tavern. The appellant was drunk and accused Mrs. Pletzer of going with another man. She said she was afraid of him, and declared he had a knife, which turned out to be a broken file. They quarrelled and appellant wanted to discontinue the partnership.

The undisputed testimony showed that at the time of the assault the appellant was riding with two other men in an automobile which overtook and passed Mrs. Pletzer's automobile as it was slowing up on Highway 54. The appellant jumped out of the moving car in which he had been riding, shot Mrs. Pletzer and then shot himself, without fatal results as to either. The defense was insanity.

The first assignment of error in appellant's brief is that the trial court erred in refusing his verified application for a continuance because of the absence of a material witness, made before the jury was impaneled. The record is wholly silent on this point, and fails to show either that such an application was filed or that it was overruled and exceptions saved thereto. The assignment in the motion for new trial to that effect does not prove itself, and the matter is one of exception which must be preserved in the bill of exceptions. Sec. 4084, R. S. 1939, Mo. R. S. A., sec. 4084; State v. Williams, 335 Mo. 234, 240(7), 71 S. W. (2d) 732, 735 (9, 10). The only showing in the bill of exceptions even remotely touching upon such an incident is where appellant's counsel at the *close* of the State's case asked that a

capias be issued for "two witnesses who are in Kansas City." Counsel stated he had telephoned the witnesses five days earlier and that they had promised to come. The court refused the request, saying it would interrupt the trial too long to send to Kansas City for them. No exceptions were saved to this ruling. It is clear, therefore, in any view of the matter, that this assignment must be overruled.

The next three assignments complain that the trial court permitted the prosecutor to cross-examine the State's own witness, Ruby Pletzer; and to impeach her; and that the impeaching testimony was incompetent, irrelevant and immaterial. We treat these assignments together. The witness was the woman who had been shot. She was evidently friendly to the appellant. On direct examination she told about the actual shooting; but on cross-examination [204] by appellant's counsel she said she had not signed the complaint in the case (which was true); that up to the time of the shooting she and the appellant had "never had a single cross word;" and she gave testimony favorable to his defense on insanity. On redirect examination the prosecutor asked her if she had had trouble with the appellant before; and the trial court sustained appellant's objection that it was cross-examination of the State's own witness, over the prosecutor's protest that she was an unwilling witness.

Thereupon the prosecutor called sheriff Mace to the stand. He started to testify about having been called on a certain occasion to the tavern operated by appellant and Mrs. Pletzer because of trouble between them, but he couldn't remember the date. He was excused to refresh his memory from his record, and witness Jones was next called. He owned the tavern site and qualifiedly testified that when appelland and Mrs. Pletzer operated it they lived together in a cabin on the place for two or three months. After the noon recess, and out of the presence of the jury, the court announced it had reconsidered its ruling on the prosecutor's right to ask the witness Ruby Pletzer leading questions, to which appellant objected and excepted, and she was recalled to the stand.

This time she said she hadn't seen "Jimmy," the appellant, for five days before the shooting; and that she had what she "supposed you could call" cross words with him prior to the assault. Then she was asked whether she had had trouble with appellant the night sheriff Mace was called to their tavern just prior to the dissolution of their partnership, and she denied it. She further denied telling the sheriff on the same occasion that appellant had a knife or threatened her, though she admitted she asked appellant what he had in his pocket. She denied that appellant said he only had a file, or that he went out and got a file and exhibited it to the sheriff—though she admitted he did go "outside." Up to this point appellant's counsel had not objected, except to one question as calling for a conclusion, which objection the court sustained. But here counsel did say: "I object to this line of questioning as being immaterial. This is his

own witness and he is asking about a lot of things that don't pertain to this case and which are remote to this case." The objection was overruled and exception saved.

The witness continued that she and appellant at that time decided they were going to dissolve partnership. Appellant left for about five days. She said they had quarreled about a week before that. Being asked if she had accused him of being out with another woman, appellant's counsel objected that that had nothing to do with this case, and was overruled. The witness then answered that she didn't so accuse him; she just told him he had. She didn't remember whether she told him she had had a date with another man, but probably did if she had. But this was not what made appellant leave. This conversation occurred while the sheriff was there. On re-cross examination she said there had been no further trouble between her and appellant until the time of the shooting—about three months. Thereafter the sheriff was recalled, and gave the testimony summarized in the first paragraph of this opinion, concerning this same incident.

While appellant's counsel did ·save exceptions when the court changed its ruling and announced the prosecutor could ask Mrs. Pletzer leading questions; yet when the questions were asked the only objections made were that the evidence was irrelevant and immaterial. But it must be remembered that this· prosecution was for assault with a malicious intent to kill, and that the defense was insanity. In such circumstances evidence of the prior relations and difficulties between the parties was competent to show malice and the intent of the appellant. 30 C. J., sec. 372, p. 157; State v. Stallings, 334 Mo. 1, 6, 64 S. W. (2d) 643, 644(5); State v. Mathis, 323 Mo. 37, 41, 18 S. W. (2d) 8, 9(1); State v. Duestrow, 137 Mo. 44, 86, 38 S. W. 554, 565 (4); State v. Mounce, 106 Mo. 226, 228, 17 S. W. 226.

It is not necessary that such evidence disclose actual threats against the victim. In State v. Tettaton, 159 Mo. 354, 377, 60 S. W. 743, 750(9), the defendant killed his half brother, and it was proven at the trial that his stepmother (mother of the deceased) had sued him over family real estate. In State v. Hughes, 344 Mo. 116, 126, 125 S. W. (2d) 66, 71(10), a father killed his daughter's divorced husband; and proof was made of the pending divorce proceedings between the daughter and the deceased, to show malice. For these reasons the sheriff's testimony as to the quarrel between the appellant and Mrs. Pletzer over their business and (especially) personal relations was not immaterial. [205] Neither was it mere impeachment. It was an essential part of the State's main case, in the proof of which the prosecutor had been disappointed by her attitude and the court's first ruling. The State was not required to abandon its efforts to make that proof because it would contradict her. In our opinion, also, the evidence was not too remote, the quarrel having occurred only three months before and resulting in a discontinuance of her

relations with the appellant, which, on the State's theory, was the cause of his attempted homicidal act.

As regards the court's ruling permitting the prosecutor to ask Mrs. Pletzer leading questions, we think there was no error. In view of her obvious antagonistic attitude, the scope and method of examination rested largely in the discretion of the trial court. State v. Shepard, 334 Mo. 423, 430(7), 67 S. W. (2d) 91, 95(10); McNeill v. Fidelity & Casualty Co., 336 Mo. 1142, 1153(5), 82 S. W. (2d) 582, 587(6).

Finding no error in the record, the judgment is affirmed. All concur.