244 S.W.2d 49 (1951)
STATE
v.
HAGERMAN.
No. 42599.
Supreme Court of Missouri, Division No. 2.
November 12, 1951.
Motion for Rehearing or to Transfer to Denied December 10, 1951.
*51 Harold L. Hagerman, Pro se.
J. E. Taylor, Atty. Gen., R. Wilson Barrow, Asst. Atty. Gen., for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied December 10, 1951.
BARRETT, Commissioner.
Harold Lee Hagerman has been found guilty of felonious assault (under the malice section of the statutes, 559.180) with intent to rob with a pistol, and of having served two prior felony convictions in other jurisdictions. He was sentenced to life imprisonment and upon this appeal urges that there was no evidence of his guilt of an assault with intent to rob with malice or of his intent to rob without malice under Section 559.190, and that the court erred in submitting his guilt under these two sections to the jury, and in refusing to instruct the jury upon the subject of common assault. It is urged that the malice section was intended to cover assaults of an aggravated or vicious nature and that there was no proof of malice because there was no threat or gesture from which it was a fair inference that the gun was to be used as a bludgeon and no evidence that the gun was a deadly weapon because there was no proof that is was loaded. As to both sections it is urged that there was no proof of an intent to kill or to do great bodily harm or of the victim's fear of death or great bodily harm. As to the merits of the conviction it is also urged that the court erred in admitting in evidence the records of the Arkansas State Penitentiary and that the evidence of his prior convictions was insufficient to establish his guilt under the Habitual Criminal Act, Mo.R.S.1949, Secs. 556.280, 556.290.
The appellant in support of his position that an intent to kill or do great bodily harm is an essential element of the offense under Section 559.180 cites the instances of shootings, stabbings or beatings with "knucks" or clubs. State v. Henderson, 356 Mo. 1072, 204 S.W.2d 774; State v. Johnson, 318 Mo. 596, 300 S.W. 702. These cases are in point under the charge under consideration only in so far as they deal with the essential elements of the offense under either statute and particularly with the element of malice under Section 559.180. State v. Cooper, 358 Mo. 269, 214 S.W.2d 19; State v. Watson, 356 Mo. 590, 202 S.W.2d 784. Section 559.190 was intended to cover a less aggravated assault than Section 559.180 relating to an assault with a deadly weapon with malice or by other means likely to produce death or great bodily harm. State v. Null, 355 Mo. 1034, *52 199 S.W.2d 639. As a general rule these statutes are employed in the instances of actual shootings, or of stabbings or of beatings, but in addition to these instances these statutes also cover other offenses in which there is an intentional assault or an assault with malice with a deadly weapon. It is not the common practice to employ these statutes in the instances of robberies or of attempted robberies but they may be so employed if all the essential elements of the offense are present. State v. Bateman, 196 Mo. 35, 95 S.W. 413. Under these statutes the actual shooting at or stabbing another is one offense while an assault with a deadly weapon may constitute another offense. State v. Harris, 209 Mo. 423, 108 S.W. 28. The malice required as to all offenses under the statute is not necessarily malice in fact in the sense of actual spite or ill will against the person assaulted as often typified in the shooting or stabbing cases, but rather as the statute says, "malice aforethought," which means malice with premeditation and design, that is an unlawful act intentionally done and determined upon before it was executed. State v. Venable, Mo.Sup., 177 S.W. 308; State v. Martin, 342 Mo. 1089, 119 S.W.2d 298, 301. Excising from the statute the language peculiarly applicable to shootings, stabbings and beatings, that part of the statute specifically applicable to the offense with which this appellant is charged would read: "Every person who shall, on purpose and of malice aforethought * * assault * * * another with a deadly weapon * * * with intent to * * * rob such person, or in the attempt to commit any burglary or other felony * * * shall be punished by imprisonment in the penitentiary not less than two years."
In substance the charge was that Hagerman "unlawfully, feloniously, wilfully, on purpose and of his malice aforethought in and upon one Owen Fox, an employee of the Ace Cab Company * * * did make an assault" with a loaded pistol which he then and there wilfully and of his malice aforethought pointed "at, against and upon" Fox with the felonious intent to rob. Briefly the state's evidence was that about nine o'clock on the evening of October 21, 1948 Fox's cab was parked near the Grand Central Bar at Sixth and Market Streets. Another cab driver informed Fox that he had some passengers in his cab. Fox went to the cab and there was a man and a woman in the back seat. Fox identified the man as the appellant, Hagerman. Hagerman said that he wanted to go to Grand and Olive. Fox stopped at Seventh and Market for a traffic light and before the light changed "he told me to go on, and I don't remember just exactly what I said to him, the exact wording that is, and he said, `Get going, Bud.' And at that time I didn't know what he meant, and then he said, `Give me your money;' and I said, I have to wait for this light.' And he said, `I said get going.'" Fox says that the light then changed and as he started forward he glanced back and Hagerman was pointing a pistol at his neck. But instead of going forward Fox "blinked the lights" in signal to another cab driver and began stopping at the curb as the other driver, Knott, came up to the cab. Knott says that Hagerman was pointing a gun at Fox and when he went to the back door Hagerman rolled the glass in the car door down, pointed the gun at him and said, "`Come on,' and something'Come on,' and `Come on' again`If you want it, come on.'" Both Fox and Knott say that Hagerman and his girl companion got out of the cab and went across the street to the American Hotel and got in a Laclede cab. Fox and Knott followed and told the cab driver not to haul them and Hagerman and the girl went down the street to the Kick Inn Tavern. Fox and Knott again followed them and the girl went in the "ladies' room" and Hagerman went in the "men's room." The police came immediately and in searching the men's room found a loaded revolver stuffed in an opening around a steam pipe in the plaster wall. Fox and Knott said that it looked like the gun Hagerman had and pointed at them. This evidence is certainly sufficient to support the charge and the jury's finding of every essential element of the offense. State v. Simon, 317 Mo. 336, 295 S.W. 1076; Annotation Ann.Cas.1918A, p. 406; 54 C.J., Sec. 218, p. 1090; 46 Am.Jur., Sec. 66, p. 169. Hagerman's intent when he pointed the gun at Fox, told him to drive on and to *53 "Give me your money" was for the jury to determine. State v. Simon, supra. There was no direct proof that the gun in fact belonged to Hagerman but it is not necessary to go into that question or the sufficiency of the evidence as to the fact of whether the gun was loaded when Hagerman pointed it at Fox. As we have said, this is not an assault with intent to kill, State v. Sears, 86 Mo. 169, it is an assault with intent to rob with a deadly weapon and in the circumstances there was no issue of fact upon the dangerous and deadly character of the weapon and "where nothing appears beyond the fact that a weapon is used in a robbery, in the manner dangerous and deadly weapons are ordinarily used to accomplish a robbery, the jury has the right, from such use alone, to draw the inference that the weapon so used was in fact a dangerous and deadly weapon" and was loaded. State v. Moore, Mo.Sup., 80 S.W.2d 128; State v. Kowertz, 324 Mo. 748, 25 S.W.2d 113. There was no evidence justifying an instruction on common assault, State v. Henggeler, 312 Mo. 15, 278 S.W. 743, 746 and there was no error in submitting the defendant's guilt under the two sections of the statute. State v. Simon, supra; State v. Null, supra; State v. Bateman, supra.
As to prior convictions of felonies the state offered in evidence Exhibit C, the record of "Harold Lee Hagerman" for two burglary and larceny sentences in 1937 from the Arkansas State Penitentiary. Exhibit D was the commitment record showing the indictments and convictions in Pulaski County Arkansas. This latter record is certified to by the Clerk of the Circuit Court and one of the circuit judges and there is no objection to this exhibit. But it is urged that the court erred in admitting in evidence Exhibit C because it was not shown that the record was of a "public office," or that Arkansas State Penitentiary is a public office in Arkansas in which the records were required to be kept or that the persons certifying to the records were required to keep and furnish the records. In short it is claimed that the exhibits do not meet the requirements of our statute as to the public records of other states as evidence, Sec. 490.220, or the requirements of the Habitual Criminal Act, Sections 556.280, 556.290. And finally, in connection with the jury's verdict it is urged that there was no evidence to support the jury's finding of the prior convictions because there was no evidence identifying appellant as the person who served the sentences mentioned in the exhibits. In the first place, the appellant's assignment in his motion for a new trial is that the court erred "in admitting illegal, incompetent and improper evidence offered by the State and admitted by the court over the objection of the defendant and consisting of the alleged record showing the commitment of one Harold Hagerman in the State Penitentiary in the State of Arkansas for a period of three years." This assignment is deficient in that it does not set forth in detail and with particularity the specific grounds relied on as required by the statute. There is no objection in this assignment to the authentication of the records or that the institutions mentioned were not public offices or that the persons certifying the records were not public officials. Consequently as to several of the objections raised in his brief this assignment is insufficient to preserve the questions for appellate review. State v. Kimbrough, 350 Mo. 609, 613, 166 S.W.2d 1077, 1079. Despite the jury's finding of the two prior convictions it could be noted that the maximum penalty of life imprisonment could have been imposed for the principal offense. Mo.R.S.1949, Sec. 559.180. In the second place, while the fact was not before the jury in this case, when this appellant was previously convicted of burglary and larceny he readily admitted these convictions and others, State v. Hagerman, 361 Mo. 994, 238 S.W.2d 327, and his argument here indeed taxes the credulity of this court.
Unquestionably, in prosecutions under the Habitual Criminal Act the records of other convictions and sentences must be properly authenticated and shown, State v. Hendrix, 331 Mo. 658, 56 S.W.2d 76, and the identity of the accused as the person convicted must be established, 24 C.J.S., Criminal Law, § 1962, p. 1157, and it is difficult to understand why the state did *54 not so establish these facts as to leave no possible room for objection. However, there is no statute in Missouri prescribing how proof of the former convictions shall be made in a habitual criminal case. The best evidence, of course, is the original record or a duly authenticated copy of the record, plus evidence identifying the accused as the convict, even though such evidence is not conclusive. Here the state offered in evidence, in addition to the exhibits, the appropriate statutes of the United States, of the State of Missouri and the statutes of Arkansas, particularly those dealing with the penal institutions of Arkansas, Ark. Stats. §§ 46-101, 46-171. Exhibit C is certified to by the "Warden of the State Penitentiary of Arkansas." It recites that he is "the keeper of the records and office books kept in the office of Warden of the State Penitentiary of Arkansas, the same being a public office not appertaining to a court." The Secretary of State of Arkansas certifies that T. C. Cogbill was the warden and the keeper of the records of a public office. So, in view of the objections, this record was sufficiently authenticated and shown to be a record of a public office. Mo.R.S.1949, Sec. 490.220; State v. Brinkley, 354 Mo. 337, 189 S.W.2d 314; State v. Tyler, 349 Mo. 167, 159 S.W.2d 777.
The assignment in his motion for a new trial is probably not sufficient to raise the question of the sufficiency of the proof as to his identity. As we have said, it would have been an easy matter for the state to have established the fact, almost beyond question. State v. Hannon, Mo.Sup., 204 S.W.2d 915. However, in this case from the exhibits identity of name, State v. Brinkley, supra, and these extraneous factors his identity is sufficiently established for the jury's finding: The authenticated records contain an accurate description of the person as to age, weight, height, color of hair and eyes, nativity and occupation. The record recites that his father is dead and that his mother is "Florence Hagerman of Janesville, Minnesota." His mother, Florence Hagerman of Janesville, Minnesota, appeared as a witness on his behalf and testified in this case. The identity of names and the attendant circumstances were sufficient under this record to identify the appellant as the convicted felon described in the Arkansas records within the requirements of the Habitual Criminal Act. Annotation 11 A.L.R.2d 870, 890; State v. Brinkley, supra.
The appellant did not testify upon the trial of this case and his defense that he was not guilty is only made to appear through the testimony of others, particularly his girl friend and companion, Norma Lell. She said that she and Hagerman got in the cab and that Fox reached under the front seat and got a lug wrench and "told the defendant to get out and he wanted to see how tough he was. The defendant told him he didn't want any trouble, because he was a cab driver himself, and we got out of the cab." She said that Hagerman had a cigarette lighter in his hand but she denied that he had a gun or that he pointed a gun at Fox or that he attempted to rob him. In connection with her testimony the defendant offered to prove by her that on the preceding night or so Fox had been in the Grand Central Bar and had a drink with her, that they had an argument about paying for drinks and Fox struck her and took five dollars from her purse. The appellant contends that he is entitled to a new trial because the court excluded this evidence. He insists that it was admissible for the purpose of impeaching Fox and on the question of malice and intent. On cross-examination Fox denied that he knew Norma Lell and denied that he had ever had an argument with her. It should be carefully noted that Hagerman does not claim to have been present when Fox and Norma were supposed to have had some difficulty and he was not himself a party to the difficulty and so far as appears had not encountered Fox and so their difficulty could have no bearing on Hagerman's malice or intent. State v. Shelton, 351 Mo. 799, 174 S.W.2d 202. Since appellant was not present and had no part in any altercation between Fox and Norma the court did not prejudicially err in excluding her version and description of that event. State v. Conway, 348 Mo. 580, 154 S.W.2d 128; State v. Maddox, 339 Mo. 840, 98 S.W.2d 535; State v. Stallings, 334 *55 Mo. 1, 64 S.W.2d 643; State v. Nelson, 166 Mo. 191, 65 S.W. 749.
It is urged that the court erred in not declaring a mistrial because of improper conduct on the part of state's counsel in the presence of the jury. But again the appellant's assignment in his motion for a new trial is so lacking in specific definiteness that the question is not reviewable upon this appeal. State v. Hepperman, 349 Mo. 681, 699, 162 S.W.2d 878. The incident and remark complained of in the appellant's argument was not so patently prejudicial as to require consideration in the absence of proper objection and insufficient assignment of error, State v. Martin, 229 Mo. 620, 129 S.W. 881, particularly so in view of the trial court's action at the time. At the time of the incident complained of the court rebuked counsel and plainly instructed the jury to disregard the improper epithetical remark and in these circumstances the court did not err in refusing to declare a mistrial. State v. Marlin, Mo.Sup., 177 S.W.2d 485; State v. Miller, 359 Mo. 327, 221 S.W.2d 724.
The assignment in the brief and in the motion for a new trial that the jury's verdict is the result of passion and prejudice, in the absence of further specification and demonstration, likewise presents nothing for review in this court. State v. Jackson, 340 Mo. 748, 102 S.W.2d 612; State v. Wright, Mo.Sup., 289 S.W. 646. The mere fact that the jury imposed the maximum penalty under the statute does not in and of itself demonstrate a verdict influenced by passion and prejudice. State v. Rizor, 353 Mo. 368, 182 S.W.2d 525; State v. Mahan, Mo.Sup., 226 S.W.2d 593.
The information was sufficient, the verdict sufficient and responsive, and there were no errors upon the record proper. Accordingly the judgment is affirmed.
WESTHUES and BOHLING, CC.
PER CURIAM.
The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.
All concur.