**STATE of Missouri, Plaintiff-Respondent,**

v.

**Charles Enlow KOEN and Leon Henry Dent, Defendants-Appellants.**

**Nos. 54926, 54950.**

Supreme Court of Missouri,
Division No. 1.

June 28, 1971.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Bell, Fullwood, Wilson & Harris, by James A. Bell and Allen I. Harris, St. Louis, for appellants.

HOLMAN, Judge.

Defendants were charged with the offense of assault with intent to do great bodily harm with malice aforethought under the provisions of § 559.180.[1] Each defendant was convicted of the lesser offense of assault with intent to do great bodily harm, without malice, and the punishment assessed was a fine of $100 and imprisonment in the St. Louis city workhouse for a term of six months. See § 559.190. Defendants have duly appealed. We affirm.

Although this was a lengthy trial, and the transcript contains more than 750 pages, we think a reasonably brief statement of the essential facts will suffice for purposes of this appeal.

The evidence offered by the State will support the following factual statement: The person alleged to have been assaulted was Rudolph Oehlert, a detective on the St. Louis city police force. On September 13, 1968, Oehlert was on duty and was driving an unmarked car accompanied by three other detectives. At about 1:35 p.m., the officers noticed that the car ahead of them had no brake light. They signaled the car to the curb and found that the driver could not produce a driver's license. The car was occupied by the defendants and was being driven by defendant Koen. The defendants were arrested and taken to the Detectives Office of the Ninth District Police Station. By that time the officers had also ascertained by radio that the car had an improper license plate.

The defendants were both Negroes and were admittedly active members of an organization called "The Black Liberators." At the time of their arrest they were dressed in a sort of uniform of that organization which consisted of black boots, black trousers, and a loose-fitting black "dashiki type of garment." While defendants were being questioned in the Detectives Office by Detectives Oehlert and Wachter, Dent looked at the bulletin board and saw a photograph thereon showing him holding a gun (this photograph was said to have been taken at a time when Adam Clayton Powell visited St. Louis and this defendant acted as one of his guards). Dent then said, "If you M.F.s think that is a big gun, I'll get a bigger gun; I'll kill all you bastards. * * * I am getting tired of you honky pigs meddling with us."

Detective Oehlert left his desk to obtain a summons book from the locker when Dent "bolted from his chair and struck him on the right side of the head." Oehlert testified: "I flew up against the closet door; it dazed me; I started to fall and he was right on top of me, and he grabbed me right around the throat and started pounding my head on the floor, and while I was laying on the floor, with Dent on top of me, I could see a boot kicking me on the right side of my body." While this occurrence was taking place Oehlert heard one of the defendants say, "let's kill these bastards now. We'll make the City pay for this in blood." At this point Wachter tried to pull Dent off of Oehlert and defendant Koen jumped on Wachter's back and began choking him and trying to pull him off of Dent, and also started kicking Oehlert. Koen then picked up a large chair and held it in the air, coming towards Wachter, when Sergeant Fitzgerald entered the room and hit Koen on the head with his slapper (blackjack). Detective Graft also entered the room and he and another detective pulled Dent off of Oehlert and while trying to place handcuffs on him he broke away and started again towards

---

1. Statutory references are to RSMo 1969, V.A.M.S.

Oehlert. By that time Oehlert had obtained his nightstick and struck Dent with it as he approached. At the same time Detective Robertson who had entered the room also hit Dent with his slapper. The officers were then able to get Dent onto the floor and to place handcuffs on him. Koen was also struck by the officers a number of times with nightsticks and slappers and they were finally able to handcuff him.

A cruising patrol car was called and used to take the defendants and Detectives Oehlert, Wachter, and Robertson to the City Hospital. While en route Detective Wachter asked Koen why he started this fight and he answered, "This is what I needed to get the ˙ people behind me. * * * I am after publicity and I'll do everything I can to get it."

Detective Oehlert sustained a cerebral concussion and a sprain on the left side of the cervical dorsal region. Although he was able to walk when he entered the City Hospital he testified that he did not remember anything from the time of his injury until he awoke in the hospital later that evening. He was later transferred to Incarnate Word Hospital, and was a patient in various hospitals a number of times during subsequent months for a total of about one month. He was away from work from September 13 until December 9, and thereafter, in February 1969, was operated upon by an orthopedic surgeon who found a deep-seated torn muscle in his left shoulder area.

Both defendants testified extensively in the case. The jury obviously found the facts in accord with the State's evidence and therefore a brief reference to defendant's evidence is all that is considered necessary. It is sufficient to say that both defendants denied that they made any threats to the officers, or made any statement of a derogatory nature, or struck any of the officers. Their testimony would indicate that the officers, without any provocation, assaulted them with brass knuckles, night-sticks, and slappers, and beat them about the head and body for a long period of time. The evidence indicated that both defendants had a number of lacerations on their heads; and that Dent had a small fracture in a bone of each hand and a fracture of the facial bone.

After being treated at City Hospital defendants were returned to jail, and shortly thereafter were released on bond and were treated at Jewish Hospital.

■ Defendants have briefed the point that "the court erred in allowing the State to strike for cause venireman Diggs for the reasons: (a) the State did not have sufficient ground to strike for cause, and (b) that this allowed the State to systematically discriminate against Negroes on the jury panel." The transcript shows that the following occurred during voir dire: "Mr. Kitchin: Anyone here ever had a relative or a close friend arrested or charged, involved in a criminal case in any way, shape or form? Mr. Raymond Diggs (a juror): Yes. Mr. Kitchin: What did that involve, sir? Mr. Diggs: A brother; assault with—Mr. Kitchin: How long ago did that occur? Mr. Diggs: Two years ago. Mr. Kitchin: Was there an arrest made by the St. Louis police and any further action taken by the Circuit Attorney's office, to your knowledge? Mr. Diggs: Yes. Mr. Kitchin: And has he talked to you about the facts of this? Mr. Diggs: Yes. * * * Mr. Kitchin: Would that affect you in this case? Mr. Diggs: Probably would. The Court: Well, you think it would prejudice you and influence you in arriving at a decision? Mr. Diggs: Yes, sir. Mr. Kitchin: May the juror be excused, then? * * * Mr. Bell [attorney for appellants]: Could you give them a fair trial based on that evidence? Mr. Diggs: Yes. The Court: Well, he is too hesitant. The Court is going to sustain him. Mr. Bell: * * * Mr. Kitchin is trying to get as many Negroes off the panel and disqualify them, and this is why he is asking this man such a question

in the manner he did. I am objecting to it * * *. The Court: * * * As far as the colored folks, we have a lot of colored people on the panel. On the first panel half of them were colored. That point hasn't been raised, until now at least, and I am going to sustain it and relieve him because the man has indicated rather strongly to the Court that he has a great deal of hesitancy whether or not he can give a fair trial."

Only subpoint "A" will be reviewed as the matter contained in "B" was not mentioned in the motion for new trial. This court recently stated that the "court has a wide discretion in determining the qualifications of a venireman and its decision thereon should not be disturbed except for a clear abuse of discretion. * * * A determination by the trial judge of the qualifications of a venireman necessarily involves a judgment based on an observation of the demeanor of the venireman and, in the light of that observation, an evaluation and interpretation of his answers as they relate to whether he would be fair and impartial if chosen as a juror. The trial judge is in a far better position to make that determination than are we from the cold record." State v. Harris, Mo.Sup., 425 S.W.2d 148, 155. In this instance the venireman had given answers that indicated both that he was and was not qualified. The record shows that in determining the question the trial judge relied strongly on his observation of Mr. Diggs and his hesitancy in responding to certain questions. In the situation presented we think it is obvious that the trial court did not abuse its discretion in excusing Mr. Diggs.

■ It is next contended that the State erred in charging defendants with assault under § 559.180 when the offense shown, if any, was a violation of § 557.215 which proscribes striking a police officer while engaged in the performance of his duties. It is often true that a single act will constitute an offense under two different stat-utes. In that situation it is generally held that the State may elect to prosecute for either offense. See State v. Skillman, 228 Mo. 434, 128 S.W. 729; State v. Shuls, 329 Mo. 245, 44 S.W.2d 94, and 22 C.J.S. Criminal Law § 9(1), pp. 20–23. We rule that the facts shown in this case would have supported a conviction for either assault or striking a police officer, and that the State could elect to prosecute either offense. In the argument portion of his brief defendant says the indictment does not state an offense under § 559.180 because it uses the words "strike, beat and wound," similar to the words used in § 557.215, while § 559.-180 uses the words "assault or beat." It is our view that the allegations are sufficient to charge the offense and we accordingly rule that the indictment was sufficient. State v. Gillespie, Mo.Sup., 336 S.W.2d 677.

■ The next point briefed is that the verdict is "against the weight of the law and the evidence." This contention presents nothing for review since the weight of the evidence was for the jury in the first instance and for the trial court on motion for new trial. State v. Dowe, Mo. Sup., 432 S.W.2d 272. Assuming that defendants intended to contend that the State did not make a submissible case, we rule that the evidence was sufficient to support the verdicts.

■ As Detective Wachter was testifying to the threats made by defendants just prior to the altercation he stated that Koen said "This city will burn yet." Defendants objected and moved for a mistrial which was denied. They contend that ruling was reversible error. We do not agree. It is our view that all of the threats made just prior to the attack upon the officers are admissible to show the state of mind, angry mood, and feeling of ill will of defendants, all of which tend to show the intent with which the attack was made. State v. Shelton, 351 Mo. 799, 174 S.W.2d 202 [4].

■ A contention of error is made relating to the testimony that a wooden ob-

ject with sharp prongs was taken from defendant Dent, and that the officers considered charging him with carrying a concealed weapon. We rule that this evidence could not have been prejudicial. This for the reason that it developed that the object in question was an African-American comb used for grooming a "natural" hairdo. There was evidence to the effect that the comb was submitted to the circuit attorney's staff and they ruled that it was not a weapon within the meaning of the statute and refused to issue a warrant. We rule this contention against defendants.

■ As we have indicated, there was testimony that there was a photograph of Dent holding a gun posted on the police bulletin board. This evidence is said to have been so inflammatory and prejudicial as to require a new trial. Defendants rely mainly upon State v. Himmelmann, Mo. Sup., 399 S.W.2d 58, which was an assault case in which a photograph of the inside of defendant's car, showing a liquor bottle on the front seat, was admitted. The exhibit was held to be irrelevant and prejudicial. We do not think the Himmelmann case is applicable to the instant facts. In the case before us we are of the opinion that evidence concerning the photograph was relevant. It was shown to be the precipitating cause of Dent's anger and threats which led to the assault shortly thereafter. The point is disallowed.

■ During the closing argument of the Assistant Circuit Attorney the following occurred: "* * * but I will tell you this. Men like this, organizations like they belong to, want—Mr. Bell: Just a minute. I want to object to that. I want to make a record. (The following proceedings were had out of the hearing of the jury): Mr. Bell: I move for a mistrial. The Court: It will be overruled, but the jury will be instructed to disregard it. * * * The Court: Members of the jury * * * any membership in any organization is not to be taken or used in any manner or considered or construed in any manner detri-

mental to the defendants. * * * Mr. Kitchin (continuing with summation): The next word would have been 'publicity,' but this has been entered into by Mr. Bell's argument and Mr. Harris', and that is what I was trying to get, this man has to have publicity." Defendants contend that the statement was an appeal to racial prejudice and that the court erred in not ordering a mistrial. In considering a similar contention this court has said that "[t]he declaration of a mistrial is a drastic remedy, and the power of a trial court in this respect 'should be exercised only in extraordinary circumstances,' State v. James, Mo., 347 S.W.2d 211, or stated another way, a mistrial should be granted only when the incident is so grievous that the prejudicial effect can be removed no other way." State v. Camper, Mo.Sup., 391 S. W.2d 926, 927. In the case at bar it should be noted that there was no reference to race and no organization was named. It is also significant that the trial court admonished the jury not to consider membership in any organization to be detrimental to defendants. We also observe that one of defendants' attorneys had argued that it was highly unreasonable to believe that defendants would be "stupid" enough to attack a police officer in a police station, and it is obvious that the statement in question was an effort to explain that action by referring to the desire of defendants for publicity. It is difficult to see how any prejudice would result from this statement and, in any event, we rule that the trial court did not abuse its discretion in failing to grant a mistrial.

■ The next point briefed is that the court erred in permitting William Blair to give medical testimony although not properly qualified as an expert witness. This contention relates to certain hospital records that the witness was asked to explain and interpret. We observe that this was the only point mentioned in the motion for new trial relating to this witness. It should be stated that the witness was a third-year medical student attached to Jew-

ish Hospital as a surgical extern. He was called as a witness because he had made an examination of Koen's physical condition and his testimony in that regard is not challenged. The objection came while Blair was testifying from a hematology report. He read and explained various figures and symbols thereon. Then the following occurred: "Q (by Mr. Kitchin): What happens when a person loses a large amount of blood, from those readings? A It usually reflects—Mr. Bell: May I make a record? (The following proceedings were had out of the hearing of the jury): Mr. Bell: Let the record show at this time I object to any testimony concerning any medical conclusion on behalf of this man for the reason he is not a medical man. The Court: Be sustained unless you qualify him." Thereafter, an attempt was made to qualify the witness and it was shown that he had had the only hematology course that a general physician would receive in medical school. The court, however, sustained the objection and the witness was not permitted to answer the question. We do not find any error in the rulings relating to the portion of this witness' testimony complained of and we accordingly rule this point against defendants.

■ The final contention of defendants is that the court erred in failing to give an instruction telling the jury that it could find one defendant guilty and the other not guilty, or, both guilty or both not guilty. No specific instruction of that kind was given. While it is the better practice to give such an instruction we cannot see how defendants could have been prejudiced in this case by the failure to do so. We reach that conclusion for these reasons: (a) Just prior to reading the instructions the court, by agreement, stated to the jury that it "will return two verdicts in this case; one with reference to the charge against Charles Koen, and one with reference to the charge against Leon Dent." (b) The court gave separate instructions hypothesizing the facts as to each defendant on each of the offenses submitted, i.e.,

assault with malice, assault without malice, and common assault. Each of those instructions had the converse provision therein, such as "and unless you so find all the facts to be, you will acquit defendant Charles Enlow Koen of assault with intent to do great bodily harm with malice aforethought." (c) In addition to separate submission instructions the court gave separate instructions as to each defendant relating to self-defense, reasonable doubt, presumption of innocence, and credibility of witnesses. (d) The jury was given separate forms of verdict for each defendant as to each offense of which the following is an example:

"We, the jury in the above-entitled cause, find the defendant Charles Koen guilty of assault with intent to do great bodily harm without malice and assess his punishment at ————.

Foreman

"We, the jury in the above-entitled cause, find the defendant Charles Enlow Koen not guilty.

Foreman"

The foregoing clearly shows that the jury was separately instructed that it must find the hypothesized facts as to each defendant before it could find him guilty, and if it did not find those facts it should find him not guilty. In view of that and the other matters mentioned we do not see any possibility that the jury could have concluded that it must find both defendants guilty or not guilty. Moreover, if the attorneys for defendants had any doubt as to whether the jury would understand that it could acquit one and convict the other the instructions given would have authorized them to explain that to the jury in their arguments. We cannot say whether or not they actually did so because only brief excerpts from the arguments are contained in the transcript. As indicated, we rule the point against defendants.

Judgments affirmed.

All concur.