STATE of Missouri, Plaintiff–
Respondent,

v.

John KENDUS, Defendant–Appellant.

John KENDUS, Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

Nos. 19205, 19759.

Missouri Court of Appeals,
Southern District,
Division One.

June 14, 1995.

Motion for Rehearing or Transfer
Denied July 3, 1995.

Application to Transfer Denied
Sept. 19, 1995.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for defendant-movant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary Moulton Bryan, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent-respondent.

SHRUM, Chief Judge.

The trial court convicted John Kendus (Defendant) of attempted sodomy, § 566.060, RSMo Supp.1990, and § 564.011, RSMo 1986, and sentenced him to five years' imprisonment. Later, he filed a timely motion for

postconviction relief pursuant to Rule 29.15. Appointed counsel filed an amended motion. Relief was denied after an evidentiary hearing.

In No. 19205, Defendant appeals the judgment of conviction, his single point being a challenge to the sufficiency of the evidence. In No. 19759, Defendant appeals the order dismissing his Rule 29.15 motion. The two appeals were consolidated as required by Rule 29.15(l).

We affirm the judgment of conviction and dismiss the appeal from the order denying Defendant's Rule 29.15 motion.

### FACTS

On April 1, 1991, L.B. was petting horses in a pasture in El Dorado Springs with her cousins. A fence separated the horses from the children. L.B. was nine years old; her cousins were younger. While they were playing with the horses, the children saw Defendant walking along a road, near the fence. When Defendant saw the children, he approached them and claimed the land they were on was his land. L.B. testified that "[Defendant] said he was going to call the cops." Defendant then told L.B. that she "would have to think of ... big favors, or else he would send [her] away." After asking L.B. and her cousins their ages, Defendant "told [the cousins] to go play by the creek."

After the younger children left, Defendant directed L.B. "to go over to [a] shed," located on the other side of a fence by which L.B. and Defendant were standing. L.B. had to cross the fence to get to the shed. Defendant held the fence up for her and, after she crossed the fence, she went into the shed. When asked why she went into the shed, L.B. replied, " 'Cause [Defendant] told me to."

Defendant followed L.B. into the shed, where he "kneeled down, and then [L.B.] kneeled down." After L.B. knelt, Defendant stood up and told her that "he was going to have to blindfold [her], and ... [she] was going to have to suck on his fingers." L.B. refused, saying that Defendant's fingers were too dirty. Defendant responded that L.B.

"was going to have to suck on his elbow." Again, L.B. refused, telling Defendant "[his elbow] was too dirty." When L.B. inferred from the sound of a motorcycle that her brother was nearby, she suddenly ran from the shed, screaming.

Her brother saw her and turned off his motorcycle. He testified that L.B. was "crying and screaming ... and she was saying something about some man after her." L.B.'s brother looked at the shed and saw Defendant emerge from it. He asked Defendant "what was going on," to which Defendant replied that L.B. was trespassing on his land. L.B.'s brother took her to their house.

While L.B. and Defendant were in the shed, one of her cousins left the creek and ran up the hill to L.B.'s house where she told L.B.'s mother what had occurred. L.B.'s mother ran toward the area where her daughter was, and a family friend called the police. L.B.'s mother saw Defendant "across the fence ... walking away." She yelled at Defendant, asking if he was "the one that had the little girl." Defendant answered that he was. L.B.'s mother testified that the following then occurred:

"[L.B.'S MOTHER]: And I asked him what he was doing with her, and he said that she had some sexual abuse problems, and I asked him what he meant by that.

[PROSECUTOR]: What did [Defendant] say?

[L.B.'S MOTHER]: I don't think he really answered me."

L.B.'s father then appeared and ordered Defendant to stay where he was until the police arrived. El Dorado Springs patrolman Ronnie Floyd was the first policeman to arrive. After being arrested and read his *Miranda* rights, Defendant told Floyd, "This little girl's going to tell you that I've done some perverted things to her." Floyd said Defendant told him that L.B. had been, "as [Defendant] put it, sexually assaulted before." Floyd testified that Defendant's statements were not in response to questions; they were "made freely."

Defendant waived a jury. At the close of the state's case, Defendant moved for a judgment of acquittal, citing *State v. Keeler*, 856

S.W.2d 928 (Mo.App.1993). The trial court overruled the motion. The defense then rested without putting on any evidence and again moved for a judgment of acquittal. On October 18, 1993, the court overruled the motion for acquittal and found Defendant guilty of attempted sodomy.

## DISCUSSION AND DECISION

On appeal in No. 19205, Defendant challenges the sufficiency of the evidence to support his conviction, contending:

"[T]he state failed to produce sufficient evidence from which a rational trier of fact could have found that [Defendant] took a substantial step towards the commission of a sodomy since the only evidence was that [Defendant] asked [L.B.] to go to a shed where he then told her he was going to blindfold her and have her suck his fingers or elbow."

In a jury-waived case, the trial court's finding of guilt has the force and effect of a jury verdict. Rule 27.01(b); *State v. Barnett*, 767 S.W.2d 38, 39[1] (Mo. banc 1989); *State v. Degraffenreid*, 877 S.W.2d 210, 212[1] (Mo. App.1994). Consequently, we review this case as though a jury had returned a verdict of guilty. *Degraffenreid*, 877 S.W.2d at 212; *State v. Giffin*, 640 S.W.2d 128, 130[1] (Mo. 1982).

The standard for appellate review of the sufficiency of evidence to support a criminal conviction is stated in *State v. Dulany*, 781 S.W.2d 52 (Mo. banc 1989):

"On review, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary.... In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt."

*Id.* at 55[2, 3] (citation omitted). Moreover, there must be evidence to support each element of the offense charged. *State v. Munson*, 714 S.W.2d 515, 521[4] (Mo. banc 1986); *Degraffenreid*, 877 S.W.2d at 212[2].

Section 566.060.3, RSMo Supp.1990, applicable to this offense, provided, "A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old." "Deviate sexual intercourse" was defined as "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person." § 566.010.1(2), RSMo Supp.1987.

A person is guilty of an attempt to commit an offense when "with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense." § 564.011.1, RSMo 1986. "A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." *Id.*

Defendant contends that no "substantial step" toward the commission of sodomy occurred. Relying primarily on *Keeler*, 856 S.W.2d 928, he argues that there is no evidence from which it can be reasonably inferred that his purpose was to commit sodomy.

We disagree. The "attempt" statute, § 564.011, does not require that an actual and specific attempt be made to perform each and every element of the crime. *State v. Bolen*, 731 S.W.2d 453, 458[6] (Mo.App. 1987) (citing *State v. Thomas*, 670 S.W.2d 138, 139[2] (Mo.App.1984)). Moreover, "a defendant's 'overt act need not be the ultimate step toward, or the last possible act in the consummation of the crime attempted.'" *Thomas*, 670 S.W.2d at 139 (quoting *State v. Olds*, 603 S.W.2d 501, 508[8] (Mo. banc 1980)).

The intent of an accused in an attempt case is rarely susceptible of direct proof; the circumstances of each case must be closely examined. *State v. Van Vleck*, 805 S.W.2d 297, 299 (Mo.App.1991). Here, there is ample evidence of Defendant's acts and words from which, when considered as a whole, the trial court reasonably and fairly could have inferred Defendant's purpose to ultimately commit sodomy, namely, he (1) made L.B. feel like she was in trouble for trespassing; (2) directed her to go to the shed where she

was to do a "big favor" for him; (3) had the victim kneel, after which he stood up; (4) told the child that she was to be blindfolded; (5) asked that she suck his fingers and elbow; and (6) made statements to L.B.'s mother and a police officer that indicated Defendant's concern that L.B.'s account of the encounter might indicate that it was of a sexual nature.

It does not require an impermissible "leap of logic" to conclude that Defendant intended to substitute his penis for his fingers or elbow, thus committing an act of sodomy. It is a fair inference that if L.B. had not run from the shed, Defendant would have continued to pursue his purpose. Defendant's conduct and words were strongly corroborative of the firmness of his purpose to commit the offense; thus he took a substantial step toward the commission of the offense. We reject Defendant's argument to the contrary.

Defendant's reliance on *Keeler*, 856 S.W.2d 928, is misplaced. This court reversed the defendant's conviction in *Keeler* because there was no evidence of the defendant's purpose as required by § 565.110, RSMo 1986, the kidnapping statute. However, we concluded in *Keeler* that there was ample evidence of the defendant's purpose to satisfy § 564.011, the attempt statute, stating,

> "The defendant's acts of making a U-turn, pulling alongside Angel, opening his car door, and commanding her to get in provide evidence of his purpose to get her into the car and evidence of a substantial step to accomplish that purpose. These acts, coupled with a consideration of the very nature of a motor vehicle, imply the defendant's purpose to remove Angel or confine her."

856 S.W.2d at 930[1] (footnote omitted). Just as the evidence in *Keeler* sufficiently implied the defendant's purpose and thereby satisfied the attempt statute, in the instant case, the evidence as summarized above implies Defendant's purpose and thus satisfies the attempt statute. Unlike the applicable law in *Keeler*, the statute defining the underlying offense in the instant case does not require as a mental state that the defendant acted "purposely" as that term is defined in § 562.016.2, RSMo 1986. It was the state's failure to prove the requisite mental state for the underlying offense of kidnapping, not the mental state for the attempt, that compelled this court to reverse the conviction in *Keeler*. 856 S.W.2d at 930–31[2]. *Keeler* does not support Defendant's argument.

■ Although Defendant filed a notice of appeal in case No. 19759, in his brief he presents no point relied on and no argument directed to that case. Thus he has abandoned, for purposes of appeal, those issues he presented to the motion court. *State v. Archer*, 814 S.W.2d 315, 319[7] (Mo.App. 1991); *State v. Gillispie*, 790 S.W.2d 519, 520 (Mo.App.1990).

We affirm the judgment of conviction in No. 19205. We dismiss the appeal in No. 19759.

FLANIGAN and MONTGOMERY, JJ., concur.