STATE of Missouri, Respondent,

v.

Tony D. GOODEN, Appellant.

No. WD 53597.

Missouri Court of Appeals,
Western District.

Feb. 24, 1998.

Rebecca L. Kurz, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, C.J., and SMART and LAURA DENVIR STITH, JJ.

ULRICH, Chief Judge.

Tony Gooden appeals his convictions following bench trial for felonious restraint, section 565.120, RSMo 1994, attempted forcible sodomy, section 566.060, RSMo 1994, and two counts of armed criminal action, section 571.015, RSMo 1994, and a term of ten years

imprisonment on the attempted forcible sodomy count and terms of three years each on the remaining counts. Mr. Gooden waived his right to jury trial and submitted to a bench trial. Mr. Gooden contends on appeal that the trial court erred in denying his motion for acquittal because, he claims, insufficient evidence was presented to establish that he attempted to forcibly sodomize the victim and hence, his convictions for attempted forcible sodomy and the corresponding armed criminal action charge must be reversed. The judgment of convictions is affirmed.

## FACTS

Mr. Gooden resided with his girlfriend, her mother, and her daughter, the victim, in Jackson County, Missouri, in January 1996. On the night of January 27, 1996, Mr. Gooden had been drinking heavily and ingesting drugs. Mr. Gooden went to his girlfriend's residence and telephoned her. When his girlfriend told Mr. Gooden to move out of her residence that evening, Mr. Gooden threatened her and told her he was going to "mess up" her car. She called the police, told the police outstanding arrest warrants existed for Mr. Gooden, and asked the police to go to her residence and arrest Mr. Gooden.

Mr. Gooden, in the meantime, asked the victim to come downstairs to help him find a brush. When the victim went into a downstairs bedroom, Mr. Gooden followed her into the room. Mr. Gooden held a knife to her throat and told her not to scream or he would kill her. Mr. Gooden also told the victim that if her grandmother came downstairs he would kill her, too. Mr. Gooden instructed her to take off her clothes, and when she did not comply, he choked her. The victim then removed her clothes and laid on the bed. She tried to cover herself with a sweater and put her hand over her vagina. Mr. Gooden, still fully dressed and holding the knife, got on top of the victim and straddled her with his knees on either side of her body. Mr. Gooden told the victim to move her hand, but she refused. Mr. Gooden told her he was not going to hurt her and that he only wanted to look at her.

Police officers Robert Strong and Helen Burke responded to the girlfriend's call and went to the residence to arrest Mr. Gooden. The victim's grandmother let the police into the home and told them Mr. Gooden was downstairs. Mr. Gooden, in the meantime, had gotten off of the victim to see who was at the door. The officers went downstairs, and when they got to the bottom of the stairs, they saw Mr. Gooden holding the knife. The officers asked Mr. Gooden to let the victim leave the room and he complied. When the victim ran past the officers she was partially undressed and screaming and crying.

Mr. Gooden refused to surrender, and the police officers held him at gun point for three hours. Mr. Gooden was very upset and told the police they would have to shoot him, and he would leave the room in a body bag. Mr. Gooden said he did not want to go back to jail. Mr. Gooden threatened to kill the officers if they went into the bedroom, and on several occasions, Mr. Gooden approached them with the knife. At one point, Mr. Gooden turned the knife on himself and tried to stab himself in the chest, but the blade bent. Mr. Gooden finally surrendered when the police called in a tactical response team.

Mr. Gooden was indicted on one count each of felonious restraint and attempted forcible sodomy and two counts of armed criminal action. At the bench trial, the state presented the testimony of Officer Burke, the victim, the victim's mother and grandmother, and Detective Newman, the detective who interviewed Mr. Gooden after the incident. At the close of the state's evidence, the court overruled Mr. Gooden's motions for judgment of acquittal. Mr. Gooden then testified that he could not recall what had happened because of his heavy drug use. Mr. Gooden denied threatening the victim with a knife and denied attempting to have sexual relations with her. At the close of all the evidence, the court found Mr. Gooden guilty of each of the charged offenses. The court sentenced Mr. Gooden to ten years imprisonment for attempted forcible sodomy and three years imprisonment on each of the remaining counts. The court ordered the ten year sentence to be served consecutively to

the remaining sentences which were to run concurrently. This appeal followed.

## I. SUFFICIENT EVIDENCE WAS PRESENTED FOR THE COURT TO FIND MR. GOODEN GUILTY OF ATTEMPTED FORCIBLE SODOMY

As his sole point on appeal, Mr. Gooden contends the trial court erred in denying his motion for judgment of acquittal, claiming insufficient evidence was presented to convict him of attempted forcible sodomy. Mr. Gooden specifically argues that the evidence was insufficient to establish that he acted with the specific purpose to commit deviate sexual intercourse as opposed to sexual contact. Mr. Gooden further argues that because the conviction for attempted forcible sodomy is invalid, insufficient evidence was offered to support the corresponding armed criminal action conviction.

The judgment in a court-tried case will be upheld on appellate review unless no substantial evidence to support it was offered, it is against the weight of the evidence, or it erroneously declares or applies the law. *State v. Smith*, 849 S.W.2d 209, 212 (Mo.App. 1993). In testing the sufficiency of the evidence, therefore, all evidence and inferences reasonably drawn from the evidence are viewed in the light most favorable to the verdict, and contrary evidence and inferences are disregarded. *State v. West*, 939 S.W.2d 399, 401 (Mo.App.1996); *Smith*, 849 S.W.2d at 212. Appellate review is limited to whether sufficient evidence was presented from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *West*, 939 S.W.2d at 401.

Section 566.060, applicable to this offense, provides that, "[a] person commits the crime of forcible sodomy if he has deviate sexual intercourse with another person by the use of forcible compulsion." § 566.060, RSMo 1994. The term "deviate sexual intercourse" is defined as "any act involving the genitals of one person and the mouth, tongue, or anus of another person or sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of

arousing or gratifying the sexual desire of any person." § 566.010(1), RSMo 1994.

A person is guilty of an attempt to commit forcible sodomy when, "with the purpose of committing the offense, he does any act which is a substantial step toward the commission of the offense." § 564.011.1, RSMo 1994. "A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." § 564.011.1, RSMo 1994.

In determining whether Mr. Gooden acted with the requisite "purpose" under sections 564.011.1 and 566.060, the trial court could properly consider both direct and circumstantial evidence of Mr. Gooden's motive. Since direct evidence of a particular mental state is seldom available, however, proof of the mental state, therefore, will usually rest on circumstantial evidence and permissible inferences. *State v. Kendus*, 904 S.W.2d 41, 43 (Mo.App.1995); *State v. Smith*, 891 S.W.2d 461, 466 (Mo.App.1994). The state may establish the mental element by evidence of and inferences from the accused's conduct before the act, the act itself, and the accused's conduct after the act. *Smith*, 891 S.W.2d at 466.

In *Kendus*, the defendant, like Mr. Gooden here, was charged with attempted sodomy. *Kendus*, 904 S.W.2d at 43. The evidence established that the defendant made the child victim believe she was in trouble for trespassing; directed her to go to the shed where she was to do a "big favor" for him; had the victim kneel while he stood; told the child that she was to be blindfolded; asked that she suck his fingers and his elbow; and made statements to the child's mother and the police officer that he was concerned the child's account of the encounter might indicate it was of a sexual nature. *Id.* at 43–44. The defendant contended the evidence was insufficient to establish that he acted with the purpose to commit sodomy. *Id.* The court rejected his contention finding that "[i]t does not require an impermissible 'leap of logic' to conclude that Defendant intended to substitute his penis for his fingers or elbow, thus committing an act of sodomy. It is a fair inference that if [the child] had not run

from the shed, Defendant would have continued to pursue his purpose." *Id.* at 44.

Here, too, the evidence is sufficient to establish that Mr. Gooden acted with a specific intent to commit forcible sodomy. As in *Kendus,* Mr. Gooden's actions strongly suggest that his ultimate purpose was to commit an act of sodomy. Mr. Gooden directed the victim to take off her clothing and threatened her with force until she complied. Once the victim was undressed, Mr. Gooden straddled her naked body and directed her to move her hand away from her vagina. This evidence gave the trial court ample reason to conclude that Mr. Gooden wished the victim to move her hand away from her vagina in order to commit an act of sodomy upon her. As in *Kendus,* a fair and reasonable inference is that if the police had not arrived and the victim had not run from the room Mr. Gooden would have continued to pursue his purpose to commit the offense of sodomy. Because the circumstances established that Mr. Gooden acted with a specific intent to commit forcible sodomy, the trial court did not err in denying Mr. Gooden's motion for judgment of acquittal.

Mr. Gooden argues, however, that his conviction is invalid because the state could have charged him with other offenses instead of attempted forcible sodomy. A single act will frequently constitute several offenses. *State v. Koen,* 468 S.W.2d 625, 629 (Mo.1971); *State v. Hughes,* 562 S.W.2d 140, 141 (Mo.App.1978). When that occurs, the state may elect to prosecute any one of the offenses arising from the act in question. *See Koen,* 468 S.W.2d at 629 (holding that state could elect to charge defendant with assault rather than striking a police officer while engaged in the performance of his duties where the defendant's actions constituted an offense under either statute); *Hughes,* 562 S.W.2d at 141 (holding that where the evidence supported the felonious assault submission, the conviction was valid despite the fact that the evidence may also have supported submission under the child-mistreatment statute). Additionally, where a defendant's actions would support convictions under several statutes, the defendant "may not complain that the state elected to prosecute him under the statute carrying the more severe penalty ..." *Hughes,* 562 S.W.2d at 141. The evidence was sufficient to convict Mr. Gooden of attempted forcible sodomy. As established by *Hughes* and *Koen,* Mr. Gooden may not challenge his conviction on the basis that his conduct may also have constituted other offenses besides attempted forcible sodomy. The point is denied.

The judgment of convictions is affirmed.

All concur.