**Daryl HEARD, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. ED 77438.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 20, 2001.

Lisa M. Stroup, Asst. Public Defender, St. Louis, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Asst. Atty. Gen., Jefferson City, MO, for respondent.

DRAPER, Judge.

Daryl Heard (hereinafter, "Appellant") appeals from his conviction of attempted

statutory sodomy in the first degree claiming there was insufficient evidence to support his conviction. We affirm.

The evidence presented to the trial court consisted of the police reports prepared in connection with the incident. The trial court considered no other evidence before rendering its decision. Therefore, the facts are as recited in the police report: On January 14, 1999, Appellant approached three boys, Q.B., (hereinafter, "Q.B."), age eleven, his brother, and a friend, and offered them ten dollars each to help him find his wallet in Union Station. Q.B.'s brother and friend were directed to check the arcade and rest rooms at Union Station. Appellant and Q.B. went into the men's restroom at the Hard Rock Café where Appellant asked Q.B. to look for his wallet in a trash can in the back stall of the restroom.

Q.B. told police he felt Appellant touch his buttocks through his clothing and when Q.B. turned around, Appellant put a knife to his throat and told him that if he screamed, Appellant would kill him. Appellant took off his tie, gagged Q.B., and told him to lie down on the floor. Q.B. then told police he heard Appellant unzip his pants. Q.B. heard someone else come into the restroom, and at that time he pulled the tie off of his mouth, crawled under the stall, and started screaming that Appellant had tried to rape him.

Appellant left the restroom and fled the restaurant. Some restaurant patrons and employees chased him down Market Street and ultimately, Appellant was apprehended. After he was arrested, Appellant denied any involvement in the incident at the Hard Rock Café, claiming he was running to catch a bus. Q.B., as well as other witnesses, identified Appellant as the man who fled the Hard Rock Café. After police advised him of his Miranda rights, Appellant admitted that he was a convicted sex offender and stated he would not be stupid enough to commit the offense of which he was accused.

After waiving his right to a jury trial, the trial court reviewed the police reports, and found Appellant guilty of attempted statutory sodomy and found him to be a persistent sexual offender. Appellant was sentenced to thirty years imprisonment. Appellant now appeals.

■ Appellant's sole point on appeal alleges there was insufficient evidence to support his conviction of attempted statutory sodomy in the first degree. Appellant claims the State failed to establish Appellant took a substantial step toward committing statutory sodomy in that the State did not establish that Appellant unzipped the pants worn by Q.B..

■ The sufficiency of the evidence in a court-tried criminal case is determined by the same standard as in a jury-tried case. *State v. Lanier*, 985 S.W.2d 377, 379 (Mo.App. E.D.1999). In considering whether the evidence is sufficient to support the jury's verdict, we must look to the elements of the crime and consider each in turn to determine whether a reasonable juror could find each of the elements beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993) citing *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). Therefore, under the *Dulany* standard, we are required to take the evidence in the light most favorable to the State and grant the State all reasonable inferences from the evidence, disregarding all contrary inferences. *Id.*

A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old. Sec-

tion 566.062.1 RSMo (1994).[1] Deviate sexual intercourse is defined as "any act involving the genitals of one person and the mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument, or object done for the purpose of arousing or gratifying the sexual desire of any person." Section 566.010(1). In this case, since Appellant was charged with attempted statutory sodomy, the State must also prove Appellant acted with the purpose of committing that offense when he does any act which is a substantial step towards the commission of the offense. Section 564.011.1. A "substantial step" is conduct that is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. *Id.*

Appellant argues that the ambiguity in the police report as to whose pants were unzipped fails to establish beyond a reasonable doubt that he attempted to have deviate sexual intercourse with Q.B.. Appellant argues the evidence does not establish he unzipped Q.B.'s pants because Q.B. merely stated he heard pants being unzipped and did not specify whose pants. The State argues that whose pants were unzipped is irrelevant because a reasonable inference from the evidence is that Q.B.'s pants were unzipped and that Appellant took a substantial step toward engaging in deviate sexual intercourse. Moreover, the State argues that even if Appellant unzipped his own pants, the totality of the circumstances surrounding the incident also raises the reasonable inference that Appellant took a substantial step toward engaging in deviate sexual intercourse.

■ The intent of the accused in an attempt case rarely is susceptible of direct proof; the circumstances of each case must be closely examined. *State v. Kendus,* 904 S.W.2d 41, 43 (Mo.App. S.D.1995). In *Kendus,* Defendant challenged the sufficiency of the evidence to support his conviction of attempted statutory sodomy stating no "substantial step" toward the commission of sodomy occurred. In that case, Defendant directed a nine-year-old girl to go into a shed on his property after he admonished her for trespassing on his land. *Id.* at 42. After the girl went into the shed, Defendant had her kneel down, told her he was going to blindfold her, and she was going to have to suck on his fingers. *Id.* When the girl refused, saying Defendant's fingers were too dirty, he told her she would have to suck on his elbow instead. Again the girl refused, and suddenly ran from the shed screaming when she heard the sound of a motorcycle passing by, assuming the driver was her brother. *Id.* Defendant later made statements to the girl's mother and police that indicated his concern that the girl's account of the encounter might indicate that it was of a sexual nature. *Id.* at 44. The court held that there was ample evidence of Defendant's acts and words from which, when considered as a whole, the trial court reasonably and fairly could have inferred Defendant's purpose to ultimately commit sodomy. *Id.*

When closely examining the circumstances as a whole, we find that the evidence in this case was more than sufficient to support Appellant's conviction. The evidence presented in this case is more egregious and compelling than the evidence in *Kendus.* Here, Appellant lured Q.B. into a restroom under the guise of searching for his wallet. He touched Q.B.'s buttocks through his clothing, put a knife to his throat, and threatened to kill him if he screamed. Appellant took off his tie,

1. All further statutory references are to RSMo 1994 unless otherwise stated.

gagged Q.B., and told him to lie down on the floor. Giving the State the benefit of all reasonable inferences and disregarding any contrary evidence, we find it reasonable that Q.B.'s statement to the police that "he heard Appellant unzip his pants" meant that Appellant unzipped his own pants, not Q.B.'s.[2] It does not require an impermissible leap of logic to conclude Appellant intended to commit an act of sodomy by unzipping his own pants while holding down a gagged boy by knifepoint in a restroom stall.

The judgment of the trial court is affirmed.

GARY M. GAERTNER, P.J. and CRAHAN, J., concur.

---

2. Even if we determined Appellant unzipped Q.B.'s pants, that act, coupled with the other evidence presented in this case, would be sufficient to fulfill the necessary requirements

---

to demonstrate a substantial step toward the commission of statutory sodomy had occurred.