**STATE of Missouri, Plaintiff–Respondent,**

v.

**Jose Luis LOPEZ–McCURDY, Jr., Defendant–Appellant.**

No. 27921.

Missouri Court of Appeals, Southern District, Division One.

Oct. 27, 2008.

Kent Denzel, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. Evan J. Buchheim, Asst. Atty. Gen. of Jefferson City, MO, Respondent.

JEFFREY W. BATES, Judge.

After a jury trial, Jose Lopez–McCurdy, Jr. (Defendant) was convicted of the forcible rape of A.M. On appeal, Defendant presents two points for decision. In Point I, Defendant contends the trial court erred in denying Defendant's motion for judgment of acquittal because the State failed to prove the element of forcible compulsion. In Point II, Defendant contends the trial court committed plain error in failing to grant a new trial based upon newly-discovered evidence. This Court affirms.

### Point I

In Defendant's first point, he contends the trial court erred in denying his motion for judgment of acquittal at the close of all of the evidence because the evidence was insufficient to support his conviction. In a jury-tried case, an appellate court reviews a trial court's ruling on a motion for judgment of acquittal to determine whether the State made a submissible case. *State v. Bush,* 250 S.W.3d 776, 778 (Mo.App.2008); *State v. Young,* 172 S.W.3d 494, 496–97 (Mo.App.2005). The issue is whether the State presented sufficient evidence from which a reasonable juror could have found Defendant guilty beyond a reasonable doubt. *State v. Johnson,* 244 S.W.3d 144, 152 (Mo. banc 2008). This Court views the evidence and all reasonable inferences derived therefrom in a light most favorable to the verdict and disregards any contrary evidence and inferences. *State v. Goodin,* 248 S.W.3d 127, 129 (Mo.App.2008). We defer to the jurors' superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony. *See State v. St. George,* 215 S.W.3d 341, 345 (Mo.App. 2007); *State v. Thompson,* 147 S.W.3d 150, 155 (Mo.App.2004); *State v. West,* 939 S.W.2d 399, 401 (Mo.App.1996). So viewed, the following evidence was adduced at trial.

Defendant and A.M. were cousins. His mother and her father were siblings. In 2000, A.M. and her family lived in Missouri. Defendant and his mother lived in Idaho. After Defendant's mother was killed in an automobile collision, A.M.'s family moved to Idaho to take care of Defendant. A.M.'s family remained in Idaho from June 2000 until June 2003, while proceedings to adopt Defendant were ongoing. Once the adoption was concluded, A.M.'s family moved with Defendant to Salem, Missouri.

While A.M. lived in Idaho, she was sexually molested by Defendant. When this first began, Defendant threatened A.M. Defendant had also hit and beaten A.M. She was afraid of Defendant and intimidated by him. He was much bigger and a lot stronger than A.M. The sexual molestation continued when Defendant and A.M. moved to Salem.

On May 18, 2005, A.M. and Defendant were 14 and 15 years old, respectively. A.M. suffered from a genetic disorder that rendered her virtually blind at night. That evening, A.M and Defendant were outside playing hide and seek with four of the other children. A.M. was wearing a pair of black sweat pants with white stripes and a number at the bottom. She had turned the pants inside out to make herself less visible. Defendant had a 40 oz. beer, which he gave to A.M. She drank enough of the beer to become "pretty dizzy." Defendant led A.M. to a neighbor's yard. Because of A.M.'s night blindness, she did not know where they were going until they reached the fence. They crossed the fence, and A.M. was sitting under a tree. Defendant said, "lay down." A.M. complied because she felt threatened. Defendant took off A.M.'s pants and underwear. Defendant held A.M.'s wrists above her head and used his weight to hold her down. Defendant put his penis into A.M.'s vagina without her consent. She did not yell out or say anything because she didn't know what to do. She felt threatened by Defendant because of his size and strength. After about five minutes, A.M. felt Defendant withdraw his penis and ejaculate. Some of the ejaculate landed on her sweat pants, which were laying on the ground. Defendant left. A.M. put on her clothes and went back to her house. She removed the sweat pants and placed them in her closet. She did not wash the pants or wear them again.

About two weeks later, Defendant ran away from home. He was accompanied by his girlfriend and six-month-old child, who also had been living with A.M.'s family. Four or five days after Defendant left, A.M. told her mother what had happened.

The police were notified and began an investigation in June 2005. A deputy took custody of the sweat pants from A.M.'s closet and obtained a buccal swab from her. An officer also located Defendant and obtained a buccal swab from him.

The pants and swabs were submitted for laboratory tests. An evidence technician found one semen stain on the outside, rear portion of the pants. The stain was located three to four inches above the crotch. No semen stains were found on the inside of the pants. The DNA profile of the semen stain showed that it contained a mixture of DNA from A.M and Defendant.

■ Defendant argues that the trial court should have granted the motion for judgment of acquittal because the evidence was insufficient to prove beyond a reasonable doubt that Defendant had sexual intercourse with A.M. by forcible compulsion. This Court disagrees.

■ Defendant was found guilty of the forcible rape of A.M. *See* § 566.030.[1] The crime of forcible rape occurs when a person "has sexual intercourse with another person by the use of forcible compulsion." Id. Forcible compulsion is defined to mean either: (1) physical force that overcomes reasonable resistance; or (2) an express or implied threat that places a person in reasonable fear of death, serious physical injury or kidnapping of such person or another person. § 556.061(12). Physical force simply means force applied to the body. *State v. Vandevere*, 175 S.W.3d 107, 108 (Mo. banc 2005). The victim need not have physically resisted before the involved force is first used. *Id.*

The State presented evidence that Defendant, who was much bigger and stronger than A.M., used his weight to hold her

---

1. All statutory references are to RSMo (2000). The jury found Defendant guilty of Count I of the information. Counts II–VI alleged other sexual offenses committed by Defendant against A.M. and her sister, T.M. The jury acquitted Defendant of these charges.

down. He also held her wrists above her head while having sexual intercourse without A.M.'s consent. This was sufficient to prove that Defendant used physical force.

■ Defendant argues, however, that the State failed to show reasonable resistance by A.M.

> In determining if the force used is sufficient to overcome reasonable resistance, the court does not look to any single fact but to the totality of the circumstances. Among the factors taken into account in considering the totality of the circumstances are whether violence or threats precede the sexual act; the relative ages of the victim and accused; the atmosphere and setting of the incident; the extent to which the accused was in a position of authority, domination, and control over the victim; and whether the victim was under duress. Each case necessarily turns on its own facts.

*State v. Niederstadt*, 66 S.W.3d 12, 15 (Mo. banc 2002) (citations omitted). Applying these factors to the evidence presented below, this Court concludes that Defendant did overcome A.M.'s reasonable resistance. Defendant began sexually molesting A.M. while they lived in Idaho. When this sexual abuse first began, Defendant expressly threatened A.M. Prior to May 2005, Defendant had also hit and beaten her. Therefore, both violence and express threats preceded the sexual act at issue here. "A victim is not required to physically resist where she submits to an offensive act out of fear of personal harm." *State v. Campbell*, 143 S.W.3d 695, 699 (Mo.App.2004). A.M. was younger, smaller and weaker than Defendant. The hide-and-seek game occurred at night, when A.M. was virtually blind. Defendant gave A.M. beer, and she drank enough to become "pretty dizzy." At that point, Defendant purposefully led A.M. away from the other children and into a neighbor's back yard. In that iso-lated location, Defendant exercised domination and control over A.M. because she was afraid of and intimidated by him. When Defendant told A.M. to "lay down[,]" she complied because she felt threatened. She did not know what to do to stop Defendant. Because of his prior threats and violence toward A.M. and her alcohol-impaired condition, she was under duress. The jury could have found that A.M. "was too young, too frightened and too small to mount a greater level of resistance, and more resistance may have proved futile or could have provoked a more serious injury." *Vandevere*, 175 S.W.3d at 110.

Considering the totality of the circumstances, the State presented sufficient evidence for the jury to find beyond a reasonable doubt that Defendant had sexual intercourse with A.M. by forcible compulsion. Point I is denied.

*Point II*

■ In Defendant's second point, he contends the court committed plain error in denying Defendant's motion for new trial based upon newly discovered evidence. The following additional facts are relevant to the disposition of this point.

During the penalty phase of the trial, defense counsel called Defendant's girlfriend, Brianna Koller (Koller), as a witness. Koller testified that she was the mother of Defendant's child. Koller and Defendant lived with A.M.'s family from March 2004 through May 2005.

The jury verdicts finding Defendant guilty and recommending punishment were returned on May 23, 2006. The court granted defense counsel an additional 10 days to file a motion for new trial. Therefore, the motion was due on or before June 19, 2006. *See* Rule 29.11(b);

20.01(a).[2] On June 16, 2006, defense counsel filed a motion for judgment of acquittal and alternative motion for new trial. On June 26, 2006, defense counsel filed an untimely "amended" motion for new trial. In this motion, counsel asserted for the first time that:

> While the testimony of the accuser stated that she was wearing the exhibit jeans inside out on the night in question. The Defense has learned subsequent to the hearing that the jeans in question actually belonged to the Defendant's girl friend and Mother of his child. Thus, Defendant's semen could have been on these slacks from earlier relations with his female friend. This should have been disclosed to the jury for proper presentation of the defense case. The defense was prejudiced thereby.

At the hearing on the motion for new trial, Koller was called as a witness. She recalled testifying during the penalty phase of the trial. After she left the witness chair, she was given a description of Exhibit 1, which were the pants A.M. was wearing on May 18, 2005. Koller never actually saw the pants, but she testified that "from what I've heard of it they are my pants." According to Koller, A.M. did not own anything similar to these pants. Koller also testified that she slept in the pants all the time, so it was a "very good possibility" that she had worn the pants after having sexual intercourse with Defendant. After hearing this testimony, the court overruled the amended motion.

Defendant contends that the trial court plainly erred in denying the request for a new trial because Koller's testimony provided an alternate theory to explain the presence of Defendant's semen on Exhibit 1. This Court disagrees.

■ Defendant first raised this issue in an untimely, amended motion for new trial. That motion preserved nothing for review and was, procedurally, a nullity. *State v. Parker,* 208 S.W.3d 331, 334 (Mo.App. 2006). Therefore, appellate review of this point is confined to an examination for plain error pursuant to Rule 30.20. *State v. Smith,* 181 S.W.3d 634, 637 (Mo.App. 2006). Defendant is not entitled to relief unless the court's decision to deny a new trial was an obvious and clear abuse of discretion that resulted in a manifest injustice or miscarriage of justice. *Id.* at 638. Plain error relief on this ground is not warranted except in the extraordinary circumstance where the newly discovered evidence would have completely exonerated the defendant. *State v. Garner,* 976 S.W.2d 57, 60 (Mo.App.1998).

This is not an extraordinary case where plain error relief is warranted. Defendant was allowed to present Koller's testimony at the hearing on the motion for new trial, and it was up to the trial court to determine the truth or falsity of what Koller said. *Id.* She identified Exhibit 1 as her pants based upon what she had been told, without ever having actually examined that exhibit. Her assertion that the pants belonged to her also conflicted with A.M.'s trial testimony that she took off the pants after the assault, put them in her closet and never washed or wore them again until they were given to the police. In addition, Koller only testified that it was possible she had worn the pants to bed after having intercourse with Defendant. However, no semen was found anywhere on the inside of the pants. The only semen stain on Exhibit 1 was found on the outside, rear of the pants about three to four inches above the crotch. This particular stain contained DNA from A.M. and Defendant. Therefore, Koller's testimony

---

**2.** All references to rules are to Missouri Court Rules (2006).

did not provide an alternative explanation for the presence of Defendant's semen on Exhibit 1. It is clear that the trial court did not find Koller's testimony credible, and this Court defers to that credibility determination. *Id.*

■ In any event, Koller's testimony would not have completely exonerated Defendant, even if such testimony had been believed by the trial court. Defendant was found guilty of having sexual intercourse with A.M. by the use of forcible compulsion. The applicable statutory definition of sexual intercourse is "penetration, however slight, of the female sex organ by the male sex organ, whether or not emission results." § 566.010(4). A.M.'s testimony that her vagina was penetrated by Defendant's penis was sufficient to prove that sexual intercourse occurred. *See State v. Taylor,* 126 S.W.3d 2, 4 (Mo.App.2003). Proof of ejaculation is not essential to establish that a rape occurred. *State v. Nelson,* 818 S.W.2d 285, 290 (Mo.App.1991); *State v. Patterson,* 806 S.W.2d 518, 520 (Mo.App.1991). Koller's testimony only challenged the accuracy of A.M.'s testimony that Defendant ejaculated on her pants. This is a collateral issue that does not provide Defendant with a complete defense to the crime of forcible rape. Point II is denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and SCOTT, J., Concurs.