**STATE of Missouri, Respondent,**

**v.**

**Roger BONICH, Appellant.**

**No. SD 28945.**

Missouri Court of Appeals,
Southern District,
Division One.

May 14, 2009.

Motion for Rehearing or Transfer Denied
June 5, 2009.

Application for Transfer Denied
Sept. 1, 2009.

Kent Denzel, Columbia, for Appellant.

Chris Koster, Atty. Gen., and Daniel N. McPherson, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Roger Bonich ("Appellant") appeals his convictions following a jury trial for two counts of the Class B felony of attempted statutory sodomy in the first degree, violations of section 564.011, and one count of the unclassified felony of statutory sodomy in the first degree, a violation of section 566.062.[1] Appellant was sentenced by the trial court to ten years imprisonment on each of the two counts of attempted statutory sodomy and seventeen years imprisonment on the statutory sodomy count. The trial court ordered the ten year sentence on the first count of attempted statutory sodomy to run consecutively to the sentences imposed on the remaining two counts and ordered the remaining two counts to run concurrently for a total of twenty seven years. Appellant asserts two points of trial court error. We affirm the judgment and sentence of the trial court.

■ Appellant's first point relied on maintains the trial court erred in overrul-

---

1. All statutory references are to RSMo 2000 unless otherwise stated.

ing his motion for judgment of acquittal at the close of all the evidence and in entering judgment against him on Count I, the attempted statutory sodomy in the first degree of S.M., because "the evidence was insufficient to establish [the crime] beyond a reasonable doubt...." Specifically, he asserts there was insufficient evidence adduced at trial to prove he

> took a substantial step toward the commission of the offense charged, or that he had the purpose to complete the offense, because, even in the light most favorable to the verdict, the evidence showed only that [Appellant] touched S.M. in the genital area outside her underwear, and there was no evidence from which the jury could reasonably infer that he had any purpose to touch her beneath her clothing, which would have been necessary to engage in deviate sexual intercourse.

Viewing the record in the light most favorable to the jury's verdict, *State v. Lopez–McCurdy*, 266 S.W.3d 874, 876 (Mo. App.2008), the record reveals that in February of 2004 Appellant and his daughter, K.B., who was eight years old at the time, moved to Springfield, Missouri.[2] On May 8–9, 2004, K.B.'s thirteen-year-old friend, S.M., who was also a neighbor, spent the weekend with K.B. at the home she shared with Appellant. The girls slept in Appellant's bedroom. K.B. was sleeping in bed with Appellant and S.M. was sleeping on some blankets on the floor. When S.M. went to sleep she was wearing a t-shirt Appellant had provided her and a pair of jeans she had borrowed from her mother.

At some point in the night S.M. awoke to find that her pants were off and Appellant was lying on the floor next to her clad only in boxer shorts. Appellant's hand was on her vagina on the outside of her underwear. As S.M. awakened he withdrew his hand from her body and rolled away from her. S.M., who was scared, got up from the floor and went into K.B.'s bedroom, which was connected to Appellant's bedroom. Once she was in the bedroom, S.M. "found some clothes and put them on." She encountered Appellant, who was on his way to the bathroom, and she told him she was going to sleep in the bedroom for the remainder of the evening. S.M. testified she wanted to "[j]ust to get out of there ..." and had no intention of staying in the house. S.M. then "went downstairs and left."

S.M. walked home and knocked on her mother's window to wake her up. When S.M.'s mother, C.K., came to the door to let S.M. into the house, S.M. told her that she woke up and her pants were off. She testified at trial that she was at that time scared to tell her mother what had happened to her. While the two were standing by the front door talking, C.K. saw Appellant drive by their home in his vehicle. C.K., who did not have a telephone in the home, then took her husband and S.M. to a nearby convenience store to telephone the authorities and C.K. went to Appellant's house to confront him.[3] C.K. ap-

---

**2.** As set out in the charges against Appellant, Appellant was also charged with one count of the attempted statutory sodomy of K.B. and two counts of the statutory sodomy of K.B. As Appellant only challenges the sufficiency of the evidence to support his conviction for the attempted statutory sodomy of S.M. we need not detail the testimony relating to K.B. or the other child Appellant was originally accused of abusing, M.R.

**3.** When interviewed at the convenience store by the police, S.M. stated that she was staying overnight with K. B.; that she "fell asleep around 10 o'clock p.m.;" that she "was awoken or awakened ... to have her pants off, and with [Appellant] in between her and her friend." At trial, S.M. admitted she told the officer "the truth, but [she] didn't tell him everything."

proached Appellant's home and began yelling at him through the front door. Police officers soon arrived on the scene. At some point during the altercation, Appellant told C.K. he had removed S.M.'s jeans because "her pants looked tight. [He] was trying to make her comfortable."

In his initial discussions with the police that evening, Appellant told the officers that he had been sleeping in his room and the girls had been sleeping in K.B.'s room. While at the house interviewing Appellant, the officers recovered the clothing S.M. said she left behind in K.B.'s room when she changed clothes.[4]

S.M. was taken to the hospital that evening for an examination. While at the hospital, she reported to an officer that she woke up at her friend's house and "her pants had been removed and that the father of her friend she was spending the night with ... was in bed with her." C.K. thereafter placed a hotline call to the Children's Division of the Department of Social Services ("the Children's Division") in relation to S.M.'s allegations[5] and K.B. was ultimately removed from the home based on this hotline call.

In early May of 2004, Appellant met with police officers and juvenile authorities on several occasions. Kevin Hazelrigg ("Mr. Hazelrigg"), a Greene County deputy juvenile officer, testified that "[o]riginally, [Appellant's] story was that [S.M.] and his daughter [K.B.] ... were sleeping in ... [K.B.'s] bedroom." However, during one interview, Appellant changed his story and admitted the girls had been sleeping in his bedroom. Appellant then admitted he did remove S.M.'s pants, but he stated he did so "because she was sleeping and looked uncomfortable." Further, Mr. Hazelrigg testified that in an earlier meeting Appellant told him that on the evening in question he "was not aware that [S.M.] had ever left the home until he woke up [at] approximately 1:30 in the morning and [C.K. was] honking in his driveway ... and they got into a confrontation in the front lawn." Appellant then changed his story and told Mr. Hazelrigg that

> in the middle of the night—1 o'clock, 1:30 in the morning—he heard a door shut. It woke him up, it startled him, he got up, looked—[K.B.] was next to him in his bed, [S.M.] was no longer on the floor where she had been sleeping in front of the television. He searched the house quickly; she was gone. He went out the front door, saw her—a figure running down the street. He got in his car, and he followed her to make sure she got home safely.

At trial, S.M. testified that she told the entire story of what happened to her for the first time to the people at the Child Advocacy Center when she was interviewed there on May 13, 2004. She stated that up until that point she had not been able to bring herself to tell anyone, including C.K., that Appellant had touched her.[6]

---

4. Authorities tested the jeans S.M. was wearing when she went to bed and the jeans she wore home from K.B.'s house. The jeans she wore home from K.B.'s house had a seminal stain on them and the semen was determined to be mainly Appellant's.

5. In relation to the hotline call, S.M. told Esther Strickland ("Ms. Strickland"), an intake worker with the Children's Division, that [s]he had gone to spend the night at one of her friends' house, and that in the middle of

the night she had gotten up and run home because she had discovered that she didn't have any pants on, and when she had gone to bed, she did have pants on. When she woke up she got scared, she ran home and told her mother what had happened....

6. In her deposition testimony taken prior to trial, S.M. stated that when she woke up Appellant was "rubbing" her vagina on the outside of her underwear and "[w]hen [she]

Appellant did not testify in this matter or present any evidence in his defense. At the close of all the evidence, the jury convicted Appellant of the crimes charged and he was thereafter sentenced by the trial court as set out above.

"In a jury-tried case, an appellate court reviews a trial court's ruling on a motion for judgment of acquittal to determine whether the State made a submissible case." *Lopez–McCurdy,* 266 S.W.3d at 876. In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.* This Court accepts as true all evidence tending to prove guilt along with all reasonable inferences that support the guilty finding while all contrary evidence and inferences are disregarded. *Id.* This Court defers "to the jurors' superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony." *Id.* Whether in a trial before a judge or a jury trial, "[g]reat deference is given to the trier of fact, and an appellate court is not to act as a 'super juror' with veto power over a verdict." *State v. Daniels,* 179 S.W.3d 273, 285 (Mo.App.2005).

Section 566.062 states that "[a] person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old."[7] Section 566.010(1), RSMo Cum.Supp.2003, defines "[d]eviate sexual intercourse" as

> any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person[.]

■ "A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense." § 564.011. "A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." *Id.; see State v. Kusgen,* 178 S.W.3d 595, 599 (Mo.App. 2005). "Thus, the crime of attempt has two elements: (1) the purpose to commit the underlying offense, and (2) the doing of an act which is a substantial step toward the commission of that offense." *Id.* at 598. The facts of each particular case dictate which acts or conduct will constitute a substantial step. *Id.* at 601.

■ "The 'attempt' statute, [section] 564.011, does not require that an actual and specific attempt be made to perform each and every element of the crime. Moreover, 'a defendant's overt act need not be the ultimate step toward, or the last possible act in the consummation of the crime attempted.'" *State v. Kendus,* 904 S.W.2d 41, 43 (Mo.App.1995) (quoting *State v. Thomas,* 670 S.W.2d 138, 139 (Mo. App.1984)). "The intent of an accused in an attempt case is rarely susceptible of direct proof; the circumstances of each case must be closely examined." *Kendus,* 904 S.W.2d at 43.

woke up he moved and turned around like he was asleep."

7. We note this matter applied the version of section 566.062 in effect at the time of the crimes at issue and this statute has been amended since that time.

In *Kendus,* 904 S.W.2d at 43, the defendant challenged the sufficiency of the evidence to support his conviction of attempted statutory sodomy by arguing "that no 'substantial step' toward the commission of sodomy occurred." The facts set out in *Kendus* were that the defendant directed a nine-year-old girl to go into a shed on his property after he admonished her for trespassing on his land to pet his horses. *Id.* at 42. After the girl went into the shed, the defendant had her kneel down, told her he was going to blindfold her, and she was going to have to suck on his fingers. *Id.* When the girl refused, saying the defendant's fingers were too dirty, he told her she would have to suck on his elbow instead. *Id.* Again the girl refused, and suddenly ran from the shed screaming when she heard the sound of a motorcycle passing by, assuming the driver was her brother. *Id.* The defendant later "made statements to [the girl's] mother and a police officer that indicated [the defendant's] concern that [the girl's] account of the encounter might indicate that it was of a sexual nature." *Kendus,* 904 S.W.2d at 44. The reviewing court held that

[i]t does not require an impermissible 'leap of logic' to conclude that [the defendant] intended to substitute his penis for his fingers or elbow, thus committing an act of sodomy. It is a fair inference that if [the girl] had not run from the shed, [the defendant] would have continued to pursue his purpose. [The defendant's] conduct and words were strongly corroborative of the firmness of his purpose to commit the offense; thus he took a substantial step toward the com-

mission of the offense. We reject [the defendant's] argument to the contrary.[8] *Id.* at 44.

■ Here, when closely examining the circumstances as a whole, we find that the evidence in this case was more than sufficient to support Appellant's conviction. In the present matter, Appellant removed S.M.'s jeans while she was sleeping in the floor of his bedroom and touched her vagina on the outside of her underwear. He only stopped touching and "rubbing" her when he discovered she had woken up. Had S.M. not awoken, "[i]t is a fair inference that [Appellant] would have continued to pursue his purpose" in some manner. *Id.*; *see also State v. Gooden,* 962 S.W.2d 443, 446 (Mo.App.1998) (holding that where the defendant was charged with attempted forcible sodomy "a fair and reasonable inference [existed] that if the police had not arrived and the victim had not run from the room [the defendant] would have continued to pursue his purpose to commit the offense of sodomy"). " '[A] jury is permitted to draw such reasonable inferences from the evidence as the evidence will permit....' " *State v. Bryan,* 60 S.W.3d 713, 716 (Mo.App.2001) (quoting *State v. Immekus,* 28 S.W.3d 421, 426 (Mo. App.2000)). Appellant's actions "were strongly corroborative of the firmness of his purpose to commit the offense; thus he took a substantial step toward the commission of the offense." *Kendus,* 904 S.W.2d at 44; *see also State v. Ward,* 235 S.W.3d 71, 76–77 (Mo.App.2007) (holding there was sufficient evidence to prove attempted statutory sodomy where the defendant's "substantial step" toward commission of

---

**8.** We note Appellant cites this Court to *State v. Molasky,* 765 S.W.2d 597 (Mo. banc 1989), an attempted murder case involving taped conversations relating to a murder for hire where no money changed hands, and *State v. Bates,* 70 S.W.3d 532 (Mo.App.2002), an attempted statutory rape and attempted statuto-

ry sodomy case where the defendant sent inappropriate letters to a child and had explicit conversations with the child, but took no steps to actually engage in sexual activity with the child. These cases are factually dissimilar to the facts elicited in the instant case and do not aid Appellant.

the offense was in having explicit communications with a thirteen year old girl over the internet, arranging a meeting with the girl, and then showing up for the meeting). The trial court did not err in denying Appellant's motion for judgment of acquittal and in convicting him of the attempted statutory sodomy of S.M.[9] Point I is denied.

■ In his second point relied on, Appellant maintains the trial court plainly erred in accepting the jury's guilty verdicts on Counts I and II, which charged him with attempted statutory sodomy, and in sentencing him on those counts because

[a]s of the dates of the alleged offenses—on or before May 9, 2004—there was no crime of an inchoate attempt under [section] 564.011 to commit first degree statutory sodomy, because neither [section] 564.011 nor [section] 566.062 defined a punishment for that offense at that time. The court therefore had no authority to enter a judgment of conviction.

■ At the outset we note Appellant admits he did not raise the issue set out in this point relied on at trial and, therefore, it is not preserved for our review. Accordingly, we can only review it, if at all, for plain error. *See* Rule 30.20.[10] Plain error review under Rule 30.20 is used sparingly and is limited to those cases where there is a strong, clear demonstration of manifest injustice or miscarriage of justice. *State v. Tanner*, 220 S.W.3d 880, 884 (Mo.App.

2007). Claims of plain error are reviewed "under a two-prong standard." *State v. Roper*, 136 S.W.3d 891, 900 (Mo.App.2004). "In the first prong, we determine whether there is, indeed, plain error, which is error that is 'evident, obvious, and clear.'" *Id.* (quoting *State v. Scurlock*, 998 S.W.2d 578, 586 (Mo.App.1999)). "If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." *Id.* "If Appellant cannot get past the first step, this Court should refrain from reviewing his claim." *State v. Spry*, 252 S.W.3d 261, 266 (Mo.App.2008). "A criminal defendant seeking plain error review bears the burden of showing that plain error occurred and that it resulted in a manifest injustice or miscarriage of justice." *Roper*, 136 S.W.3d at 900. "The outcome of plain error review depends heavily on the specific facts and circumstances of each case." *Id.*

Appellant was charged in the "Amended Felony Information" as follows:

COUNT I

The Prosecuting Attorney of the County of Greene, State of Missouri, charges that [Appellant], in violation of [s]ection 564.011 ... committed the Class B felony of attempted statutory sodomy in the first degree....

COUNT II

The Prosecuting Attorney of the County of Greene, State of Missouri, charges

---

9. Appellant also asserts, in the argument portion of this point relied on, that "[i]t is important to note here that there was an offense [, sexual misconduct,] that the State could have charged that would not have depended on speculation as to [Appellant's] intent." Basically, Appellant argues that the State charged him with the wrong crime. It should be noted, however, that when a criminal's conduct is prohibited by more than one statute the State may, at its discretion, "decide under which statute to charge the defendant." *State v. Ondo*, 232 S.W.3d 622, 629 (Mo.App.2007); *see also State v. Bouse*, 150 S.W.3d 326, 335–36 (Mo.App.2004). Accordingly, there is no error in the fact that Appellant was charged under the particular statutory scheme at issue.

10. All rule references are to Missouri Court Rules (2007).

that [Appellant], in violation of [s]ection 564.011 ... committed the Class B felony of attempted statutory sodomy in the first degree....

Under the version of the statutory sodomy law in effect at the time Appellant committed the offenses at issue, section 566.062.2 set out that: "[s]tatutory sodomy in the first degree is a felony for which the authorized term of imprisonment is life imprisonment or a term of years not less than five years...." Further, it is important to remember that Appellant was charged with attempting to commit the crime of statutory sodomy under section 564.011.3, which states:

[u]nless otherwise provided, an attempt to commit an offense is a:

(1) Class B felony if the offense attempted is a class A felony.

(2) Class C felony if the offense attempted is a class B felony.

(3) Class D felony if the offense attempted is a class C felony.

(4) Class A misdemeanor if the offense attempted is a class D felony.

(5) Class C misdemeanor if the offense attempted is a misdemeanor of any degree.

"As just quoted ... [s]ection 564.011.3 begins with the caveat that the grade of the attempt offense will be one degree less than for the completed crime ... 'unless otherwise provided.'" *State v. Mitchell,* 999 S.W.2d 247, 257 (Mo.App.1999), *superceded by statute as set out in State v. Withrow,* 8 S.W.3d 75, 80 (Mo. banc 1999) (quoting § 564.011.3).

Here, statutory sodomy as set out in section 566.062 was an unclassified felony.

In other words, it did not carry one of the sentencing classifications found in section 557.016. The punishment for such unclassified felonies is set out in section 557.021.3:

[f]or the purpose of ... determining the penalty for attempts and conspiracies, offenses defined outside of this code shall be classified as follows:

(1) If the offense is a felony:

(a) It is a class A felony if the authorized penalty includes death, life imprisonment or imprisonment for a term of twenty years or more;

(b) It is a class B felony if the maximum term of imprisonment authorized exceeds ten years but is less than twenty years [.]

Here, Appellant was charged per section 566.062.2 with statutory sodomy, a crime punishable by "life imprisonment or a term of years not less than five years...." Such unclassified crimes which include the punishment of life imprisonment are treated under section 557.021.3(1)(a) as "class A felon[ies]...."[11] The attempt statute, section 564.011.3(1), then holds that an attempt to commit a class A felony is punished as a Class B felony. Class B felonies receive a sentence ranging from ten to twenty years imprisonment. § 557.021.3(1)(b). Appellant was sentenced within that range on each count of attempted statutory sodomy. Appellant has failed to prove "error that is 'evident, obvious, and clear.'" *Roper,* 136 S.W.3d at 900 (quoting *Scurlock,* 998 S.W.2d at 586). We decline to exercise our discretion to review for plain error under Rule 30.20. *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc 1995). The

---

**11.** We note section 557.021.3 "by its own terms does not apply to all offenses—only those 'defined outside the code.'" *State v. Fenton,* 941 S.W.2d 810, 812 (Mo.App.1997) (quoting *State v. Wolf,* 930 S.W.2d 484, 485 (Mo.App.1996)). "The purpose of section 557.021.3 is not to define code offenses but to ascribe to non-code offenders the same plight as code offenders." *Fenton,* 941 S.W.2d at 812.

trial court did not err in accepting the jury's guilty verdicts on Counts I and II and in sentencing Appellant based on those verdicts. Point II is denied.

The judgment of the trial court is affirmed.

BATES, J., and SCOTT, P.J., Concur.