

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
           )
     Plaintiff-Respondent, )
           )
v.             )    No. SD37762
           )    Filed: **October 17, 2023**
KENNY JACKSON, )
           )
     Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

#### Honorable Michael Pritchett, Circuit Judge

### DISMISSED IN PART AND AFFIRMED

Kenny Jackson ("Jackson") appeals the trial court's judgment convicting him, after a jury trial, of trafficking of a controlled substance in the first degree under Section 195.222, possession of a controlled substance with the intent to distribute under Section 195.211, and unlawful possession of a firearm under Section 571.070.[1] Jackson raises five points on appeal. In Point I, Jackson argues the trial court plainly erred by submitting Instruction No. 7 as the verdict director for Count 1 when Instruction No. 7 did not include a definition of "possessed." In Points II and V, Jackson argues the trial court plainly erred by not *sua sponte* dismissing the charges against

---

[1] All statutory references are to RSMo 2016, including, as applicable, statutory changes effective January 1, 2017. All rule references are to Missouri Court Rules (2022).

him due to a speedy trial violation and then later by failing to *sua sponte* declare a mistrial when the State improperly presented other crimes evidence against Jackson. In Points III and IV, Jackson contends the State failed to present sufficient evidence from which a reasonable juror could convict him of Counts 2 and 3, respectively. Jackson now argues Point III is moot because the trial court has expunged all records related to Count 2 and vacated his Count 2 sentence. We agree. We dismiss Jackson's Point III as moot and otherwise affirm the trial court's judgment.

## Factual Background and Procedural History

"On appeal, we view the evidence in the light most favorable to the verdict and grant the State all reasonable inferences that can be drawn from that evidence." *State v. Hilleman*, 634 S.W.3d 709, 711 (Mo.App. 2021). Viewed from this perspective, the following evidence was adduced at trial.

On March 8, 2016, officers with the Poplar Bluff Police Department (the "officers") executed a search warrant at 627 Dewey Street in Poplar Bluff (the "residence"). Jackson, his girlfriend, another man, and three children, two of whom were Jackson's children, were inside when the officers entered the residence. Only Jackson, his girlfriend, and their children lived at the residence.

Lieutenant Josh Stewart ("Lieutenant Stewart") of the Poplar Bluff Police Department testified he and other officers breached the front door of the residence. Lieutenant Stewart observed Jackson standing by a kitchen counter and then saw Jackson run into a bathroom. Lieutenant Stewart followed Jackson and saw Jackson exit the bathroom about five seconds later. Lieutenant Stewart could hear the toilet flushing and ordered Jackson to the ground. After securing Jackson, Lieutenant Stewart observed the toilet was not filling all the way. The toilet

2

was eventually removed and the officers found a plastic bag containing 55.03 grams of methamphetamine in the toilet drainpipe.

The officers also found two plastic bags on the kitchen counter near where Jackson was standing when the officers breached the front door of the residence. One bag contained 3.32 grams of methamphetamine, and the other bag contained a crystalline substance used by methamphetamine dealers as a cutting agent for methamphetamine. On the same kitchen counter, the officers also found a digital scale, approximately $2,700 cash, and approximately four grams of marijuana.

The officers also found two firearms in a dresser drawer in the master bedroom. In the same dresser, the officers found Jackson's driver's license and non-driver's license, his girlfriend's driver's license and non-driver's license, mail with Jackson's name, mail with his girlfriend's name, a blue thermos containing 37 grams of marijuana, and a Rubbermaid container containing loose marijuana. The officers found men's deodorant on top of the dresser. The officers discovered another firearm and a total of 139.63 grams of methamphetamine under the bed in the master bedroom. In bodycam footage admitted at trial, Jackson's girlfriend told the officers the firearms were not hers and she did not know how the firearms came to be in the residence.

The State charged Jackson with trafficking of a controlled substance in the first degree under Section 195.222 (Count 1), possession of a controlled substance with the intent to distribute under Section 195.211 (Count 2), and unlawful possession of a firearm under Section 571.070 (Count 3) (related only to the two firearms found in the dresser drawer and not the firearm found under the master bedroom bed). The State charged Jackson as a persistent drug offender under Section 579.170 and a persistent offender under Section 558.016. The jury found

3

Jackson guilty of all counts. The trial court entered judgment and sentenced Jackson to 20 years' imprisonment on Count 1, 15 years' imprisonment on Count 2, and 10 years' imprisonment on Count 3, with all sentences to run concurrently. Jackson appealed. To the extent additional factual background or procedural history is necessary to resolve any point on appeal, it is included in the discussion of each point. For ease of analysis, we consider Jackson's points out of order.

**Point I – Instructional Error**

In Point I, Jackson alleges the trial court plainly erred in submitting Instruction No. 7, the verdict director for trafficking of a controlled substance in the first degree (Count 1), because Instruction No. 7 contained no definition of "possessed," which Jackson alleges resulted in manifest injustice because possession was an essential element of the offense and the omission of the definition of "possessed" from Instruction No. 7 relieved the State of its burden to prove every element of the offense charged.

Jackson's counsel affirmatively responded he had no objection to the form of Instruction No. 7 during the instruction conference at trial, and Jackson did not raise any issue of instructional error in his motion for new trial. Jackson requests plain error review.

Standard of Review

"Instructional error requires reversal when the error is 'so prejudicial that it deprived the defendant of a fair trial.'" *State v. Brandolese*, 601 S.W.3d 519, 531 (Mo. banc 2020) (quoting *State v. Sanders*, 522 S.W.3d 212, 215 (Mo. banc 2017)). "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear." *Id.* (quoting *State v. Baumruk*, 280 S.W.3d 600, 608 (Mo. banc 2009)). "But even if the instructional error is evident, obvious and clear, the defendant must 'demonstrate that the trial court so misdirected or

4

failed to instruct the jury as to cause manifest injustice or a miscarriage of justice.'" *Id.* (quoting *State v. Cooper*, 215 S.W.3d 123, 125 (Mo. banc 2007)). "Moreover, 'plain error review is discretionary,' and 'this Court will not use plain error to impose a *sua sponte* duty on the trial court to correct Defendant's invited errors.'" *Id.* (quoting *State v. Bolden*, 371 S.W.3d 802, 806 (Mo. banc 2012)).

<u>Analysis</u>

The trial court submitted Instruction No. 7 as the verdict-directing instruction for trafficking of a controlled substance in the first degree. The instruction stated, in part:

> As to Count 1, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about March 8th, 2016, in the County of Butler, State of Missouri, the defendant possessed more than 30 grams of methamphetamine, and
>
> Second, that such conduct was a substantial step toward the commission of the offense of trafficking in the first degree by attempting to distribute more than 30 grams or more of any material containing any quantity of methamphetamine, a controlled substance, and
>
> Third, that defendant engaged in such conduct for the purpose of committing such trafficking in the first degree,
>
> then you will find the defendant guilty of trafficking in the first degree.

Jackson now asserts the trial court should have included in Instruction No. 7 a definition of "possessed." The Notes on Use to MAI-CR3d 325.11.2, the pattern instruction for trafficking of a controlled substance in the first degree, do not list "possessed" as a term that must be defined despite note 4 listing several terms that must be defined.[2] But note 2 in the Notes on Use to MAI-CR3d 325.02, the pattern instruction for "Controlled Substances: Possession," states: "Section 195.202 makes it unlawful for any person to possess or have under his control a

---

[2] We refer to the Missouri Approved Instructions-Criminal 3rd as MAI-CR3d. Because the alleged crime at issue in Count 1 occurred on or about March 8, 2016, MAI-CR3d was the applicable MAI.

5

controlled substance. This instruction submits that defendant possessed the substance. . . . The term 'possessed' must be defined." MAI-CR3d 325.02 sets out the following definition of "possessed":

> As used in this instruction, the term "possessed" means either actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who is not in actual possession has constructive possession if he has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons. (Possession may also be sole or joint. If one person alone has possession of a substance, possession is sole. If two or more persons share possession of a substance, possession is joint.)

Jackson argues *State v. Farris*, 125 S.W.3d 382 (Mo.App. 2004), is on-point and demonstrates the trial court's failure to include a definition of "possessed" in Instruction No. 7 is plain error necessitating reversal and remand for a new trial.[3] In *Farris*, Farris argued the trial court plainly erred in denying Farris's request to instruct the jury on the definition of possession in the verdict director for attempt to manufacture methamphetamine. *Id.* at 385. The court reversed and remanded for a new trial, holding the trial court plainly erred by failing to instruct the jury on the definition of possession, an element of attempt to manufacture methamphetamine, as charged by the State. *Id.*

We agree with Jackson that *Farris*, along with MAI-CR3d 325.02, shows the trial court erred by not defining "possessed" in Instruction No. 7 when the State chose to make possession an essential element of the crime of trafficking of a controlled substance in the first degree as charged in Count 1.

---

[3] Jackson also relies on *State v. Pliemling*, 645 S.W.3d 86, 92 (Mo.App. 2022), where the court granted plain error review and relief when it determined Pliemling "suffered a manifest injustice when she was found guilty of a felony offense, rather than a misdemeanor, without the jury making all requisite findings to support the felony classification." While *Pliemling* is an example of the Southern District affording plain error review and granting relief, it is so factually distinguishable to be of no guidance to our resolution of this case.

However, the trial court's failure to *sua sponte* define "possessed" in Instruction No. 7 amounts to plain error only if Jackson's possession of the controlled substance was in serious dispute. *See* **State v. Stover**, 388 S.W.3d 138, 154 (Mo. banc 2012) ("Plain error exists when an instruction omits an essential element and the evidence establishing the omitted element was seriously disputed."); **Cooper**, 215 S.W.3d at 126 ("[I]f the evidence establishing the omitted element was not in dispute, the jury's verdict would not have been affected and no plain error relief need be given."); **State v. Harrell**, 342 S.W.3d 908, 921 (Mo.App. 2011) ("But *Farris* also does not stand for the proposition that the failure to give a definition required by the substantive law is *per se* prejudicial for purposes of plain error review.").

Jackson relies on **Farris**, where the court declined to find the evidence of possession "beyond serious dispute" where Farris was one of three persons in a car he did not own. **Farris**, 125 S.W.3d at 394. Several items were found in the locked trunk of the car. **Id.** Although Farris was a passenger in the car and some items were found on the passenger side of the road, it was unclear whether Farris was in the front or back seat and whether items were thrown from the front or back seat. **Id.** It was also disputed whether Farris was present when a witness saw some individuals parked on the side of the road and engaged in the manufacturing process. **Id.** The court also noted that the case involved constructive possession, and that the State in closing argument argued a "concept of possession" contrary to the statutory definition of constructive possession and explicitly rejected by the Supreme Court of Missouri. **Id.** **Farris** is distinguishable from this case on its facts, and because it involved constructive possession only, and because here there is no claim that the State argued a "concept of possession" contrary to Missouri law. In fact, as discussed below, Jackson does not dispute the jury received the correct definition of "possessed" in two other jury instructions.

7

We reject Jackson's argument that whether he possessed methamphetamine was in serious dispute. While Jackson did not concede he "possessed more than 30 grams of methamphetamine," we find his possession of more than 30 grams of methamphetamine was "beyond serious dispute." Even assuming Jackson contested his possession of methamphetamine found elsewhere in the residence, it was "beyond serious dispute" that Jackson "possessed" the methamphetamine discovered in the toilet drainpipe. *See* ***State v. Michael***, 234 S.W.3d 542, 554-55 (Mo.App. 2007) (finding no plain error in the trial court failing to *sua sponte* define "possession" in the verdict directors for possession of drug paraphernalia with intent to manufacture controlled substances and possession of ephedrine with intent to manufacture methamphetamine "when the evidence established 'beyond serious dispute' Defendant's possession of materials used to make methamphetamine"); ***State v. Smith***, 157 S.W.3d 687, 696 (Mo.App. 2004) (finding no plain error in the trial court failing to *sua sponte* define "possession" in the verdict director for attempted manufacturing when the evidence established actual possession "beyond serious dispute" where, when officers located Smith and chemicals and equipment commonly used in the manufacture of methamphetamine, Smith was alone and locked in a basement accessible only by a separate stairway entrance).

The reasoning in ***Michael*** and ***Smith*** applies here. Lieutenant Stewart observed Jackson run into and exit the bathroom and heard the toilet flush. Although Lieutenant Stewart testified he did not observe anything, including illegal substances, on Jackson when Jackson ran, Lieutenant Stewart's testimony demonstrates Jackson's possession of the methamphetamine found in the toilet drainpipe was "beyond serious dispute." And this is true even though, as Jackson notes, others were in the residence when Lieutenant Stewart observed Jackson run into and exit the bathroom and heard the toilet flush. The presence of others in the residence may

have created a contested issue as to methamphetamine found elsewhere in the residence but not as to the methamphetamine found in the toilet drainpipe, which amounted to more than 30 grams of methamphetamine, as charged by the State in Count 1.

Jackson argues that the trial court's failure to define "possessed" in Instruction No. 7 was even more confusing and prejudicial given that the trial court included the following definition of "possessed" in Instruction No. 9 for Count 3, unlawful possession of a firearm:

> As used in this instruction, the term "possessed" means having actual or constructive possession of an object with knowledge of its presence. A person has actual possession if he has the object on his person or within easy reach and convenient control. A person has constructive possession if he has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons.

The trial court also defined "possessed" in Instruction No. 8, the verdict director for Count 2, possession of a controlled substance with intent to distribute. Jackson does not challenge the accuracy of the definition of "possessed" in Instruction Nos. 8 and 9. Jackson argues the prejudice from defining "possessed" in Instruction Nos. 8 and 9 but not in Instruction No. 7 was compounded by Instruction No. 6 directing the jury (correctly and consistently with MAI-CR3d 304.12 (now Missouri Approved Instructions-Criminal 4th 404.12)) to consider each count separately.

Jackson's argument is not supported by Missouri law. "The established principles which govern review of an alleged error of omission are that instructions must be considered together and that absence of language in a particular instruction does not prejudice the defendant if the subject matter is covered and provided elsewhere in the instruction." *State v. Sandles*, 740 S.W.2d 169, 173 (Mo. banc. 1987) (no plain error when instruction erroneously omitted language specifying the jury had the duty to determine punishment in the penalty phase where two other instructions contained language virtually identical to the omitted language); *State v.*

9

*Holt*, 592 S.W.2d 759, 776 (Mo. banc 1980) (no plain error when the trial court failed to read to the jury the last paragraph of an instruction setting out the State's burden to prove guilt beyond a reasonable doubt where three other instructions included the burden of proof language) ("Instructions must be considered together.  Reading instruction No. 4 with instructions Nos. 5 through 7, it is obvious that the jury was instructed as to the burden on the state to prove each element of the offense beyond a reasonable doubt.") (internal citation omitted); *State v. Spry*, 252 S.W.3d 261, 266 (Mo.App 2008) (no plain error when verdict directors for first-degree assault and first-degree robbery omitted definition of "serious physical injury" where the definition was included in the verdict director for second-degree assault); *State v. Reed*, 243 S.W.3d 538, 541 (Mo.App 2008) (no plain error when verdict director for second-degree burglary omitted definition of "stealing" where the definition was included in the verdict director for felony stealing); *State v. Mickle*, 164 S.W.3d 33, 60-62 (Mo.App 2005) (no plain error when verdict directors for possession of ephedrine with intent to manufacture methamphetamine and possession of drug paraphernalia with intent to use to manufacture methamphetamine omitted definition of "possession" where the definition was included in a separate instruction expressly applying to the verdict directors).

Unlike the instructions in *Farris*, which did not define "possession," two instructions in this case (Instruction Nos. 8 and 9) correctly defined "possessed" for the jury.  Reading the instructions as a whole, the instructions submitted to the jury the correct legal definition of "possessed," further establishing that the trial court's failure to *sua sponte* define "possessed" in Instruction No. 7 did not cause Jackson to suffer manifest injustice or miscarriage of justice amounting to plain error.  Point I is denied.

10

**Point III - Sufficiency of the Evidence (Count 2), Now Claimed Moot By Expungement**

In his Appellant's Brief filed in February 2023, Jackson argued the State presented insufficient evidence for a reasonable juror to convict him of Count 2. In January 2023, Jackson filed a Petition for Expungement-Marijuana Related Offense(s) in a new case and sought to vacate his sentence and expunge records related to his conviction in Count 2 for possession of a controlled substance with intent to distribute. In March 2023, the trial court in the new case entered its Judgment and Order of Expungement and Order to Vacate the Sentence Marijuana-Related Offense(s) for a Defendant Currently Incarcerated and ordered Jackson's sentence vacated and all records related to Count 2 expunged.

Jackson now argues Point III is moot because his sentence in Count 2 was vacated and all records related to Count 2 expunged. We agree. Because there is no longer a conviction as to Count 2, there is nothing left for us to review or determine as to Count 2 on appeal. *See Williams v. Mo. Dept. of Corrs.*, 556 S.W.3d 107, 110 (Mo.App. 2018) ("Williams's conviction and sentence have been vacated. Thus, the ultimate relief he seeks . . . is no longer applicable as he has neither a conviction nor a sentence.") (finding underlying cause of action moot and dismissing appeal); *In re Est. of Pethan*, 475 S.W.3d 722, 728 (Mo.App. 2015) (dismissing point on appeal as moot where "[a]ny decision from this court resolving Brother's current complaint that the Sanctions Judgment was improvidently entered would have no practical effect").

The State argues the trial court lacked jurisdiction to vacate the sentence and expunge records related to Count 2 during the pendency of this appeal, citing *Nicholson v. Surrey Vacation Resorts, Inc.*, 463 S.W.3d 358, 367 (Mo.App. 2015), for the general proposition that "an appeal cuts off trial court jurisdiction to exercise any judicial function in the case and vests

11

the jurisdiction in the appellate court." But, here, the trial court did not act in the case pending on appeal and instead vacated the sentence and expunged the records as to Count 2 in an entirely new case filed by Jackson, which the State did not oppose despite being a named party defendant and receiving notice.[4] Article XIV, Section 2 of the Missouri Constitution provides for expungement of certain marijuana-related convictions, and the State does not contend that the trial court failed to follow the requirements of the Missouri Constitution. Because there is no longer a sentence or conviction related to Count 2, there is nothing left for us to decide as to Count 2. Point III is dismissed as moot.

### Point IV - Sufficiency of the Evidence (Count 3)

Jackson argues the State failed to present sufficient evidence from which a reasonable juror could convict him of unlawful possession of a firearm as a convicted felon in Count 3 because the State failed to prove Jackson knowingly possessed the firearms found in the master bedroom dresser drawer.

<u>Standard of Review</u>

"When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." *State v. Boyd*, 659 S.W.3d 914, 925 (Mo. banc 2023) (quoting *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005)). "[G]reat deference is given to the trier of fact, and an appellate court will not weigh the evidence anew." *Id.* (quoting *State v. Alexander*, 505 S.W.3d 384, 393 (Mo.App. 2016)). "The evidence and all reasonable inferences therefrom are viewed in the light most

---

[4] The named defendants in the expungement action were the Missouri Department of Corrections, the Division of Probation and Parole, the Butler County Circuit Court, the Poplar Bluff Police Department, the Butler County Prosecuting Attorney, the Butler County Sheriff Department, and the Missouri State Highway Patrol.

favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." ***Id.*** (quoting ***Belton***, 153 S.W.3d at 309).

"We defer to the fact-finder's 'superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony.'" ***Hilleman***, 634 S.W.3d at 713 (quoting ***State v. Lopez-McCurdy***, 266 S.W.3d 874, 876 (Mo.App. 2008)). "Circumstantial rather than direct evidence of a fact is sufficient to support a verdict." ***Id.*** (quoting ***State v. Lehman***, 617 S.W.3d 843, 847 (Mo. banc 2021)). "If circumstantial evidence supports equally valid inferences, it is up to the fact-finder to determine which inference to believe." ***Id.***

Analysis

Section 571.070 sets out the required elements of the crime of unlawful possession of a firearm:

> 1. A person commits the offense of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and:
>
> (1) Such person has been convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony[.]

Jackson challenges only the sufficiency of the evidence concerning whether he knowingly constructively possessed the firearms found in the master bedroom dresser drawer. Because it is undisputed that Jackson did not have actual possession of the firearms found in the dresser drawer, the only disputed issue is whether the State presented sufficient evidence from which a reasonable juror could determine Jackson knowingly constructively possessed the firearms found in the dresser drawer. "Possession of a prohibited object therefore has two distinct elements: (1) 'conscious and intentional possession . . . either actual or constructive'; and (2) 'awareness of the presence and nature' of the item being possessed." ***State v. Ludemann***,

13

386 S.W.3d 882, 885 (Mo.App 2012) (quoting *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992)). "Exclusive control of the premises where the item is found raises an inference of access and control, but joint control requires further evidence connecting the defendant with the item." *Id.* (citing *Purlee*, 839 S.W.2d at 588). "Examples of such additional evidence include incriminating statements or other acts showing a consciousness of guilt by the defendant, routine access to the location of the item, commingling of the item with the defendant's personal effects, and the item being in plain view." *Id.* at 885-86 (citing *State v. Millsap*, 244 S.W.3d 786, 789 (Mo.App. 2008)). "Constructive possession is not determined by a 'precise formula,' however, and we look to the totality of the circumstances to determine whether the State has provided the required additional incriminating evidence." *State v. Stephens*, 482 S.W.3d 499, 502 (Mo.App 2016) (citing *State v. Kerns*, 389 S.W.3d 244, 248 (Mo.App. 2012)).

Jackson argues the State failed to present sufficient evidence of constructive possession because the officers found the firearms in a different dresser drawer than his other possessions and in a drawer containing his girlfriend's items. The State presented evidence that Jackson's personal items were located in and on top of the same dresser as the firearms. In addition, the State's evidence included bodycam footage where Jackson's girlfriend told the officers the firearms were not hers and she did not know how the firearms came to be in the residence. The State presented evidence that only Jackson and his girlfriend lived at the residence with their children. The State also presented evidence that the officers found no mail or driver's license in the dresser belonging to the other man at the residence when the officers breached the front door of the residence. The State presented sufficient evidence from which a reasonable juror could conclude Jackson knowingly constructively possessed the firearms based on the totality of the circumstances. *See State v. Langdon*, 110 S.W.3d 807, 813-14 (Mo. banc 2003) (holding the

14

State presented sufficient evidence of constructive possession of a firearm where the State presented evidence the firearm was located in male defendant's master bedroom in a dresser filled with men's clothes). As in ***Langdon***, the jury could infer, from the presence of the firearms in the dresser drawer, that Jackson knew the firearms were present, particularly where the dresser contained Jackson's personal items and was located in the master bedroom of the residence where only Jackson, his girlfriend, and their children resided, and Jackson's girlfriend told the officers the firearms were not hers and she did not know how they came to be in the residence. Point IV is denied.

**Points II and V - Plain Error Review of Other Crimes and Speedy Trial Violation Claims**

In Point II, Jackson alleges the trial court plainly erred in failing to *sua sponte* declare a mistrial based on the State's improper introduction of evidence and references to Jackson's prior felony conviction and other interactions with the testifying officers. Jackson alleges the State improperly elicited testimony suggesting Jackson had prior felony convictions for controlled substance offenses and improperly emphasized this testimony in closing argument. Jackson challenges the State's references in voir dire and closing argument to Jackson's prior felony conviction along with testimony from the officers that Jackson's address was on file with probation and parole, that they were familiar with Jackson from prior narcotics investigations, and that they had previously arrested Jackson in his vehicle and at the residence. Following the State's opening statement, Jackson and the State entered into a joint stipulation that established Jackson was convicted of a felony prior to March 8, 2016, and was a convicted felon at the time of the offense for which he was on trial. Jackson acknowledges he objected to none of the evidence about which he now complains and requests plain error review.

15

In Point V, Jackson alleges the trial court plainly erred by failing to *sua sponte* dismiss the charges against him because the State violated his right to a speedy trial.[5]

Because Points II and V both involve discretionary plain error review, we consider them together.

Standard of Review

"Generally, this Court does not review unpreserved claims of error." ***Brandolese***, 601 S.W.3d at 525. Rule 30.20 allows "plain errors affecting substantial rights [to] be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. "The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." ***Brandolese***, 601 S.W.3d at 526 (quoting ***State v. Jones***, 427 S.W.3d 191, 195 (Mo. banc 2014)). "Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error 'facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" ***Id.*** (quoting ***State v. Clay***, 533 S.W.3d 710, 714 (Mo. banc 2017)).

---

[5] Jackson alleges the trial court "abused its discretion overruling [Jackson]'s motion to dismiss and entering sentence and judgment against him[,]" but then acknowledges "Mr. Jackson's trial counsel did not renew the motion prior to trial. The standard of review, therefore, would seem to be plain error." The proper standard of review is plain error:

> In cases where the defendant has failed to preserve the speedy trial issue by failing to file a motion to dismiss or failing to include the speedy trial issue in a motion for new trial, and where the argument on appeal is that the trial court failed to *sua sponte* dismiss the charges, we have found plain error review appropriate.

***State v. Oliver***, 655 S.W.3d 407, 412 (Mo.App. 2022). We also note that, contrary to his argument on appeal, Jackson did not file a motion to dismiss based on a speedy trial violation. While Jackson did note the "excessive amount of time" he spent awaiting trial in a *pro se* "Motion for Bail Reduction" and a *pro se* plea proposal, he did not seek dismissal based on a claimed speedy trial violation.

16

<u>Analysis</u>

As to both Points II and V, we decline plain error review because Jackson has failed to facially establish manifest injustice or miscarriage of justice from the claimed errors. As to his claims in Point II concerning improper admission of evidence, Jackson acknowledges he must establish manifest injustice or miscarriage of justice, but he evaluates the claimed errors under the five-factor test used in *State v. Williams*, 659 S.W.3d 376, 378-79 (Mo.App. 2023), to determine the "prejudicial effect of uninvited evidence of other crimes."[6] Likewise, as to his claim of speedy trial violation in Point V, Jackson alleges prejudice under the four-factor test for evaluating an alleged speedy trial violation. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). The burden of demonstrating manifest injustice or miscarriage of justice "is much greater than the burden of proving prejudicial error." *State v. Calahan*, 589 S.W.3d 740, 743 (Mo.App. 2019) (citing *State v. Deckard*, 18 S.W.3d 495, 497 (Mo.App. 2000)). *See also Brandolese*, 601 S.W.3d at 531 ("All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear.") (quoting *Baumruk*, 280 S.W.3d at 608). Jackson has not met his burden, and we decline plain error review. Points II and V are denied.

---

[6] Jackson points to *State v. Stockbridge*, 549 S.W.2d 648 (Mo.App. 1977), as an example of the cumulative effect of inflammatory comments necessitating plain error review and the grant of a new trial. In *Stockbridge*, the prosecutor in closing argument referred to the defendant "as a 'professional', a 'pro', a 'professional car thief' and as engaged in 'stealing cars', and thus branded him with being a 'criminal' of 'that class or kind'" even though the defendant was charged with assaulting an officer, not with car theft, and the State presented no evidence of any prior criminal conviction of the defendant. *Id.* at 651. This is a far different case, where the parties stipulated to Jackson's prior felony conviction, and the alleged inflammatory comments relate to Jackson's prior interactions with the testifying officers.

## Conclusion

The trial court's judgment is affirmed.



GINGER K. GOOCH, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS